PAUL STAM, JR. v. THE STATE OF NORTH CAROLINA; JAMES B. HUNT, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NORTH CAROLINA; RUFUS EDMISTEN, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA; SARA MORROW, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NORTH CAROLINA; NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES; ROBERT WARD, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DIVISION OF SOCIAL SERVICES OF THE DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NORTH CAROLINA; SOCIAL SERVICES COMMISSION; JAMES WIGHT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE WAKE COUNTY DEPARTMENT OF SOCIAL SERVICES; WAKE COUNTY, A BODY POLITIC

No. 79

(Filed 4 March 1981)

1. Abortion § 4; Constitutional Law § 17; Taxation § 7— human fetus not "person" — no constitutional bar to State funding of abortions

Decision of the Court of Appeals that a human fetus is not a "person" within the protection guaranteed by Art. I, §§ 1 and 19 of the N.C. Constitution and that State funding of elective abortions does not violate Art. V, § 5 of the N. C. Constitution requiring every act which levies a tax to "state the special object to which it is to be applied" is affirmed by the Supreme Court.

2. Counties § 6.1— authority of county to levy taxes

Counties must derive the power of taxation from the legislature, and any attempt to exercise the taxing power which is found not to be within the powers granted to the county is *ultra vires* and void.

3. Counties § 6.1— power to levy taxes — strict construction

A grant to a county of the power to levy taxes must be strictly construed.

4. Abortion § 4; Counties § 6.1; Taxation § 5.2— medically unnecessary abortions — county's levy of taxes — no statutory authority

G.S. 153A-255 did not give counties the underlying authority to levy taxes pursuant to G.S. 153A-149(c)(30) to fund medically unnecessary abortions, since the authority conferred upon counties to provide social services pursuant to G.S.

153A-255 is limited to providing the poor with the basic necessities of life and a medically unnecessary abortion is not a basic necessity of life. Therefore, Wake County exceeded its statutorily conferred power in levying a tax to fund medically unneccessary abortions and the tax levy was *ultra vires* and void.

Justice MEYER did not participate in the consideration or decision of this case.

ON appeal from the decision of the Court of Appeals, reported in 47 N.C. App. 209, 267 S.E. 2d 335, affirming the granting of summary judgment for defendants by *Braswell, J.*, at the 29 March 1979 Session of WAKE Superior Court. This case was argued as No. 59. Fall Term. 1980.

Plaintiff instituted this action as a citizen, resident and taxpayer of the State of North Carolina and of Wake County seeking a declaratory judgment that the action of defendants in paying for medically unnecessary abortions is illegal. Plaintiff alleged, *inter alia,* that:

5. Defendants jointly and severally have been, and continue to pay and cause to be paid out of tax monies of the State of North Carolina and of Wake County, monies for the performance of abortion of live human fetuses, which abortions are medically unnecessary.

6. Defendants purport to act under administrative rules, codified as 10 NCAC 42W0001 *et seq* which rules purport to establish a State Abortion Fund and purport to be authorized by G.S. 143B-153 and/or G.S. 14-45.1 and to have been effective February 1, 1978.

Plaintiff challenged the payment of monies for abortions as *"ultra vires* any power given to Wake County by any statute lawfully enacted by the General Assembly of North Carolina." He also challenged the payment of money on constitutional grounds, alleging that a fetus is a person within the "Law of the Land" clause of the North Carolina Constitution, Article 1, Section 19 and entitled to due process before being deprived of life, liberty or property. Finally, plaintiff alleged that the payment of funds "[c]onstitutes an application of tax monies to purposes not stated in the Acts levying the tax in violation of Article V, Section 5 of the North Carolina Constitution."

Defendants answered, denying the material allegations of the complaint, and moved for summary judgment. Judge Braswell

granted summary judgment for defendants and found that a fetus is not a legal "person" within the meaning of the North Carolina Constitution, that the funding of monies for medically unnecessary abortions was not *ultra vires* and violated neither statutory nor constitutional law.

The Court of Appeals, in an opinion by Judge Parker, Chief Judge Morris and Judge Martin (Robert M.) concurring, affirmed. Plaintiff appealed to this Court pursuant to G.S. 7A-30(1) on grounds that the appeal involves a substantial question arising under the North Carolina Constitution.

*Paul Stam, Jr., for plaintiff appellant.*

*Rufus L. Edmisten, Attorney General, by Steven M. Shaber, Associate Attorney, for the State, appellee.*

*Michael R. Ferrell for the County of Wake, appellee.*

BRANCH, Chief Justice.

**[1]** By his first assignment of error, plaintiff contends that the trial court erred in concluding that a human fetus is not a "person" within the protection guaranteed by Article I, Sections 1 and 19 of the North Carolina Constitution. Plaintiff's second assignment of error is to the trial court's conclusion that the state funding of these abortions does not violate Article V, Section 5 of our Constitution requiring every act which levies a tax to "state the special object to which it is to be applied."

We have carefully examined the unanimous decision of the Court of Appeals as it relates to plaintiff's Assignments of Error Numbers 1 and 2. We conclude that the authorities cited, the principles of law enunciated, and the reasoning of the panel of that court are correct and fully support the result reached on the questions of law presented by these assignments of error. We therefore approve and adopt the decision insofar as it affirms the granting of summary judgment on these first two issues.

We turn to plaintiff's final assignment of error which challenges the authority of the county to levy taxes and appropriate monies for the purpose of funding medically unnecessary abortions.

**[2]** It is well settled that counties are mere "instrumentalities and agencies of the State government and are subject to its legislative

control; they possess only such powers and delegated authority as the General Assembly may deem fit to confer upon them." *High Point Surplus Co. v. Pleasants,* 264 N.C. 650, 654, 142 S.E. 2d 697, 701 (1965). It is equally well settled that a sovereign state possesses the inherent power of taxation, but counties must derive that power as well as all others from the legislature. *In re Appeal of Martin,* 286 N.C. 66, 209 S.E. 2d 766 (1974); *Hajoca Corp. v. Clayton,* 277 N.C. 560, 178 S.E. 2d 481 (1971); 71 Am. Jur. 2d "State and Local Taxation" § 86 (1973). Furthermore, "[a]ny attempt to exercise the taxing power . . . which is found not to be within the powers granted to the municipality, is *ultra vires* and void." 71 Am. Jur. 2d, *supra.*

**[3]** A grant to a county of the power to levy taxes must be strictly construed. 4 Antieau's Local Government Law § 41.00 (1966); 71 Am. Jur. 2d *supra* § 87. "It is likewise an established rule that the authority of municipalities to levy a tax must be made clearly to appear, and that doubts, if any, as to the power sought to be exercised, must be resolved against the municipality." 71 Am. Jur. 2d *supra*; 4 Antieau's Local Government Law, *supra.*

The power of a county to levy taxes is conferred by G.S. 153A-149. Subsection (b) of that statute provides, *inter alia*:

(b) Each county may levy property taxes without restriction as to rate or amount for the following purposes:

* * *

(8) Social Services. — To provide for public assistance required by Chapters 108 and 111 of the General Statutes.

We agree with the Court of Appeals, and do not think there is any real dispute that this section is inapplicable to the instant case. Chapter 108 is entitled "Social Services" and includes authorization for certain medical assistance. G.S. 108-59. However, the medical services are limited to those "essential to the health and welfare" of the recipients. By no stretch of the imagination can we consider medically unnecessary abortions as "essential to the health and welfare" of the recipients. Chapter 111 deals exclusively with aid to the blind. Thus, the power to levy taxes to fund medically unnecessary abortions must be found elsewhere.

**[4]** Defendants contend, and the Court of Appeals agreed, that the necessary authority is found in G.S. 153A-149(c)(30) which confers

Stam v. State

upon a county the power to levy property taxes, with a rate restriction, for various services, including:

(30) Social Services. — To provide for the public welfare through the maintenance and administration of public assistance programs not required by Chapters 108 and 111 of the General Statutes, and by establishing and maintaining a county home.

We agree that, on its face, this section confers the power to levy taxes to fund certain social service programs. However, G.S. 153A-149(g) provides as follows:

This section *does not authorize any county to undertake any program, function, joint undertaking, or service not otherwise authorized by law.* It is intended only to authorize the levy of property taxes within the limitations set out herein to finance programs, functions, or services authorized by other portions of the General Statutes or by local acts. [Emphasis added.]

It is clear, then, that the power to tax conferred by section .(c)(30) depends in turn upon the existence of authority to implement a given program in the first instance. Defendants maintain, and again the Court of Appeals agreed, that the underlying power to implement a county program of funding for medically unnecessary abortions is to be found in G.S. 153A-255 which provides:

*Authority to provide social service programs.* — Each county shall provide social service programs pursuant to Chapter 108 and Chapter 111 and *may otherwise undertake, sponsor, organize, engage in, and support other social service programs intended to further the health, welfare, education, safety, comfort, and convenience of its citizens.* [Emphasis added.]

We disagree.

In *Hughey v. Cloninger*, 297 N.C. 86, 253 S.E. 2d 898 (1979), this Court had occasion to construe this statute in determining whether the underscored language authorized a county to establish a school for dyslexic students. In holding that the statute conferred no such authority, we noted that the emphasized portion of the statute authorizes a county to implement only programs "of the type

created in Chapters 108 and 111 of the General Statutes." *Id.* at 92, 253 S.E. 2d at 902. We there stated:

> A review of the various aid programs established by Chapters 108 and 111 of the General Statutes indicates that the education of dyslexic children is not the type of "social service program" or "public assistance program" contemplated by [G.S. 153A-149(c)(30) and G.S. 153A-255]. The programs in Chapters 108 and 111 are respon- **sive to the needs of impoverished citizens *who are unable to provide for the basic necessities of life.***

*Id.* at 93, 253 S.E. 2d at 902. [Emphasis added.]

While the decision in *Hughey* turned on the fact that the school was not limited to a class of impoverished students, it is undisputed here that the funding of medically unnecessary abortions is avail- able only to indigent women. Nevertheless, *Hughey* limits the broad language of G.S. 153A-255 to programs similar in nature to those provided for in Chapters 108 and 111. *Hughey* held that one com- mon thread running through those chapters was that all the pro- grams were intended to aid the indigent. Our further review of those statutes reveals that they all provide the class of poor with basic necessities which they themselves are unable to provide, in- cluding, for example, nursing care, employment opportunities, and food stamps. We therefore conclude that the authority conferred upon counties to provide social services pursuant to G.S. 153A-255 is limited to providing the poor with the basic necessities of life. We find it inconceivable that the legislature would have intended med- ically unnecessary abortions to be basic necessities of life.

Further evidence of the legislature's intent in passing G.S. 153A-255 may be found in that statute's predecessor. Prior to the enactment of the current statute, the legislature authorized coun- ties:

> (21) To provide for the *maintenance* of the poor. To provide by tax for the maintenance, comfort and well- ordering of the poor; to employ, biennially, by public letting or otherwise, some competent person as overseer of the poor; to institute proceedings by the warrant of the chairman against any person coming into the county who is likely to become chargeable thereto, and cause the

Stam v. State

removal of such poor person to the county where he was
last legally settled; and to recover by action in the super-
ior court from the said county, all the charges and ex-
penses whatever, incurred for the maintenance or remov-
al of such poor person . . . .

N. C. Code, Ch. 17, Sec. 707(21) (1883).

The language of this act remained virtually unaltered until
the statute under consideration was enacted by the General Assem-
bly in 1973. It is apparent to us that the intent and purpose of the
former act was to *maintain* the poor. In light of the types of pro-
grams outlined in Chapters 108 and 111, and in the absence of clear
authorization otherwise, we are of the opinion that the legislature
did not intend by the broad language of G.S. 153A-255 to authorize
counties to levy taxes to fund medically unnecessary abortions.

Finally, we are not inadvertent to the fact that the morality
and legality of abortions have been and remain topics of widespread
emotional and intellectual debate. Neither do we think that legisla-
tors are insensitive to the ongoing debate concerning this highly
volatile subject. It is our opinion, therefore, that had the legislature
intended to authorize counties to fund medically unnecessary abor-
tions, it would have made its intent clear by express authorization.
This the legislature has not done. We therefore hold that defendant
Wake County exceeded its statutorily conferred power in levying
the tax involved in the funding of medically unnecessary abortions.
Such a levy without express authorization from the General
Assembly was *ultra vires* and void.

The decision of the Court of Appeals affirming the judgment
of Braswell, J., is reversed in part and affirmed in part, and the case
is remanded to that court for further remand to the Wake County Su-
perior Court for entry of judgment in accordance with this opinion.

Affirmed in part.

Reversed in part.

Justice MEYER did not participate in the consideration or
decision of this case.