ROSIE J., ON HER OWN BEHALF, AND ON BEHALF OF ALL WOMEN SIMILARLY SITUATED, RALEIGH WOMEN'S HEALTH ORGANIZATION, AND JOHN MARKS, M.D. v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, C. ROBIN BRITT, SR., IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, AND JAMES HUNT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF NORTH CAROLINA

No. 232PA96

(Filed 3 October 1997)

1. **Abortion; Prenatal or Birth-Related Injuries and Offenses § 3 (NCI4th)— State Abortion Fund restrictions—use of Medical Assistance Fund not required**

   When the General Assembly restricted the use of the State Abortion Fund to eliminate payments for medically necessary abortions, the State was not obligated to fund such abortions using the State's contribution to the Medical Assistance Fund.

   **Am Jur 2d, Abortion and Birth Control §§ 3, 61, 62, 64.**

2. **Abortion; Prenatal or Birth-Related Injuries and Offenses § 3 (NCI4th)— medically necessary abortions—restrictions on State funding—indigent women—not suspect class—not deprivation of fundamental right**

   Indigent women who need medically necessary abortions are not members of a suspect class and are not being deprived of a fundamental right by the refusal of the State to fund abortions for them. Therefore, the State's refusal to fund medically necessary abortions is not subject to strict scrutiny, and the State does not have to show a compelling State interest to justify its action.

   **Am Jur 2d, Abortion and Birth Control §§ 3, 61, 62, 64.**

**3. Abortion; Prenatal or Birth-Related Injuries and Offenses § 3 (NCI4th)— medically necessary abortions—restrictions on State funding—test for determining constitutionality**

The test that must be applied to determine whether restrictions placed by the General Assembly on State funding of medically necessary abortions for indigent women violate the North Carolina Constitution is whether the restrictions bear any rational relation to a legitimate governmental interest.

**Am Jur 2d, Abortion and Birth Control §§ 3, 61, 62, 64.**

**4. Abortion; Prenatal or Birth-Related Injuries and Offenses § 3 (NCI4th)— medically necessary abortions—restrictions on State funding—constitutionality**

Restrictions placed by the General Assembly on State funding of medically necessary abortions for indigent women is rationally related to the legitimate governmental objective of encouraging childbirth; the restrictions are thus valid and do not violate Art. I, § 1, Art. I, § 19, or Art. XI, § 4 of the North Carolina Constitution.

**Am Jur 2d, Abortion and Birth Control §§ 3, 61, 62, 64.**

Justice PARKER dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 prior to determination by the Court of Appeals of an order entered by Hight, J., at the 12 February 1996 Nonjury Civil Session of Superior Court, Durham County. Heard in the Supreme Court 12 December 1996.

This case brings to the Court the question of whether restrictions placed by the General Assembly on the funding of medically necessary abortions for indigent women violate the Constitution of North Carolina. In 1965, the General Assembly provided for the creation of the State Fund for Medical Assistance. This was done to allow the State to coordinate State action with the federal government's action to establish a Medicaid program. The federal and state governments as well as the counties of the state contribute to the Medical Assistance Fund. In *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147 (1973), the United States Supreme Court held that a woman has a constitutional right to an abortion. Following that decision, the State made payments for abortions for indigent women from the State Fund for Medical Assistance.

**ROSIE J. v. N.C. DEPT. OF HUMAN RESOURCES**

[347 N.C. 247 (1997)]

In 1977, Congress adopted the Hyde Amendment, which prohibited the use of any federal funds contributed to the Medicaid program for abortions except when the pregnant woman's life would be endangered if she were to carry the pregnancy to term. As a result of this loss of federal funds, in 1978 the General Assembly established the State Abortion Fund, from which payments were made for abortions for eligible women. In 1995, the General Assembly drastically reduced payments for abortions by the adoption of the following provision:

> (b) Eligibility for services of the State Abortion Fund shall be limited to women whose income is below the federal poverty level, as revised annually, and who are not eligible for Medicaid. The State Abortion Fund shall be used to fund abortions only to terminate pregnancies resulting from cases of rape or incest, or to terminate pregnancies that, in the written opinion of one doctor licensed to practice medicine in North Carolina, endanger the life of the mother.

Act of June 26, 1995, ch. 324, sec. 23.27, 1995 N.C. Sess. Laws 660, 751, *as clarified by* Act of July 28, 1995, ch. 507, sec. 23.8A, 1995 N.C. Sess. Laws 1525, 1661. Because of this action by the General Assembly, payment by the State for an abortion when the pregnancy is not the result of rape or incest or when the woman's life is not in danger has been virtually eliminated.

The plaintiffs brought this action to challenge what the State has done. The plaintiffs allege that the action of the State violates (1) Article I, Section 1 of the North Carolina Constitution, which provides that all persons are endowed with certain inalienable rights, including "life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness," N.C. Const. art. I, § 1; (2) Article I, Section 19 of the North Carolina Constitution, which provides that no person shall be "deprived of his life, liberty, or property, but by the law of the land" and that "[n]o person shall be denied the equal protection of the laws," N.C. Const. art. I, § 19; and (3) Article XI, Section 4 of the North Carolina Constitution, which provides that "[b]eneficent provision for the poor, the unfortunate, and the orphan is one of the first duties of a civilized and a Christian state. Therefore the General Assembly shall provide for and define the duties of a board of public welfare," N.C. Const. art. XI, § 4.

On 19 February 1996, the superior court dismissed the plaintiffs' case pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6).

The plaintiffs appealed, and we allowed discretionary review prior to a determination by the Court of Appeals.

*Center for Reproductive Law & Policy, by Eve C. Gartner; and Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, by Thomas M. Stern, for plaintiff-appellants.*

*Michael F. Easley, Attorney General, by Belinda A. Smith, Assistant Attorney General, for defendant-appellees.*

*Moore & Van Allen, PLLC, by Jonathan D. Sasser, on behalf of The American Civil Liberties Union of North Carolina Legal Foundation, The South Mountain Women's Health Alliance, NC Equity, and The National Association of Social Workers on Behalf of Its North Carolina Chapter, amici curiae.*

*Stam, Fordham & Danchi, P.A., by Paul Stam, Jr., on behalf of North Carolina Right to Life, Inc., amicus curiae.*

WEBB, Justice.

[1] The plaintiffs first argue that when the General Assembly restricted the use of the State Abortion Fund to eliminate payments for medically necessary abortions, the defendants were obligated to fund such abortions using the State's contribution to the Medical Assistance Fund. Assuming the defendants could have used the Medical Assistance Fund in this way, we do not believe this was the intent of the General Assembly. We cannot believe the General Assembly intended for the defendants to pay for abortions from another source when it had so radically restricted payments from the Abortion Fund. The question is whether this action of the General Assembly is constitutional.

The plaintiffs next say that it was error to grant the motion to dismiss because the allegations of the complaint raised factual issues. They say that they can introduce evidence that without the abortion funding, eighteen to twenty-three percent of Medicaid-eligible women will carry unwanted pregnancies to term. They also say they can show the dramatic effect on the health and well-being of those indigent women who are deprived of medically necessary abortions.

Whether a woman should carry a pregnancy to term and the asserted dire consequences of the State's refusal to fund abortions are not determinative of the issues in this case. No person has the constitutional right to have the State pay for medical care. The ques-

tion in this case is whether the State has violated Rosie J.'s constitutional rights by paying for medical services for some, including childbirth expenses, while refusing to pay for an abortion for Rosie J. This is a legal and not a factual question.

[2] In passing on the claim of the plaintiffs, we must first determine whether indigent women who need medically necessary abortions are members of a suspect class or are being deprived of a fundamental right by the refusal of the State to fund abortions for them. If either condition exists, the actions of the State would be subject to strict scrutiny, and the State would have to show a compelling State interest to justify its action. *Texfi Industries, Inc. v. City of Fayetteville*, 301 N.C. 1, 269 S.E.2d 142 (1980).

Indigent women are not a suspect class. They have not been subjected to a history of purposeful unequal treatment so as to command extraordinary protection from the democratic political process. In *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 36 L. Ed. 2d 16 (1973), the United States Supreme Court held that to be a fundamental right, the right must be explicitly or implicitly guaranteed by the Constitution. To have the State pay for an abortion is not a right protected by the North Carolina Constitution and is not a fundamental right.

[3],[4] The test we must apply to determine the constitutionality of the State's action is whether it bears any rational relation to a legitimate governmental objective. *State ex rel. Util. Comm'n v. Carolina Util. Cust. Ass'n*, 336 N.C. 657, 681, 446 S.E.2d 332, 346 (1994). The encouragement of childbirth is a legitimate governmental objective. *Stam v. State*, 47 N.C. App. 209, 219, 267 S.E.2d 335, 342-43 (1980), *aff'd in part, rev'd in part on other grounds*, 302 N.C. 357, 275 S.E.2d 439 (1981). The State may encourage childbirth by refusing to fund abortions.

The plaintiffs contend that there is not a rational relation between the restrictions on abortions and the Medical Assistance Program, which provides that medical care be provided to indigent persons when it is essential to the health and welfare of such persons. N.C.G.S. § 108A-55(a) (1994). The plaintiffs also say the restriction on abortions does not bear a rational relation to the basic goal of the Department of Human Resources, which is to "assist all citizens— as individuals, families, and communities—to achieve and maintain an adequate level of health, social and economic well-being, and dignity." N.C.G.S. § 143B-137 (1993).

**ROSIE J. v. N.C. DEPT. OF HUMAN RESOURCES**

[347 N.C. 247 (1997)]

It is not necessary that State action be rationally related to all State objectives. It is enough that it is related to some legitimate State objective. That is the case here.

We have held here that the action of the General Assembly in placing severe restrictions on the funding of medically necessary abortions for indigent women is valid. It follows that this action does not violate Article I, Section 1; Article I, Section 19; or Article XI, Section 4 of the Constitution of North Carolina.

We have not relied on any federal court cases because the plaintiffs based their argument on the Constitution of North Carolina. The federal cases are consistent with this opinion. *See Harris v. McRae*, 448 U.S. 297, 65 L. Ed. 2d 784 (1980); *Maher v. Roe*, 432 U.S. 464, 53 L. Ed. 2d 484 (1977); *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147.

The judgment of the Superior Court is affirmed for the reasons stated in this opinion.

AFFIRMED.

Justice PARKER dissenting.

I respectfully dissent. In my view the determinative question in this case is not whether there is a fundamental right to have the State fund an abortion. Clearly, no such right exists. The determinative question is whether the State's policy of refusing to fund medically necessary abortions for Medicaid eligible women while funding all other medically necessary treatments incident to the pregnancy of Medicaid eligible women impermissibly interferes with a pregnant woman's right to choose abortion without unduly burdensome governmental interference. *See Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147 (1973). Plaintiffs argue, and I agree, that the allegations of the complaint, if proved, would support a constitutional challenge under Article I, Section 19 of the North Carolina Constitution.

Accordingly, I would reverse the trial court's order allowing defendants' Rule 12(b)(6) motion and remand to the trial court.