SHAW, Justice.
We have on appeal In re T.W., 543 So.2d 837 (Fla. 5th DCA 1989), which declared unconstitutional section 390.001(4)(a), Florida Statutes (Supp.1988), the parental consent statute. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We approve the opinion of the district court and hold the statute invalid under the Florida Constitution.
I.
The procedure that a minor must follow to obtain an abortion in Florida is set out in the parental consent statute[1] and related rules.[2] Prior to undergoing an abortion, a *1189 minor must obtain parental consent or, alternatively, must convince a court that she is sufficiently mature to make the decision herself or that, if she is immature, the abortion nevertheless is in her best interests. Pursuant to this procedure, T.W., a pregnant, unmarried, fifteen-year-old, petitioned for a waiver of parental consent under the judicial bypass provision on the alternative grounds that (1) she was sufficiently mature to give an informed consent to the abortion, (2) she had a justified fear of physical or emotional abuse if her parents were requested to consent, and (3) her mother was seriously ill and informing her of the pregnancy would be an added burden. The trial court, after appointing counsel for T.W. and separate counsel as guardian ad litem for the fetus, conducted a hearing within twenty-four hours of the filing of the petition.
The relevant portions of the hearing consisted of T.W.’s uncontroverted testimony that she was a high-school student, participated in band and flag corps, worked twenty hours a week, baby-sat for her mother and neighbors, planned on finishing high school and attending vocational school or community college, had observed an instructional film on abortion, had taken a sex education course at school, would not put her child up for adoption, and had discussed her plans with the child’s father and obtained his approval. She informed the court that due to her mother’s illness, she had assumed extra duties at home caring for her sibling and that if she told her mother about the abortion, “it would kill her.” Evidence was introduced showing that the pregnancy was in the first trimester.
The guardian ad litem was accorded standing and allowed to argue that the judicial bypass portion of the statute was unconstitutionally vague and that parental consent must therefore be required in every instance where a minor seeks to obtain an abortion. The trial court ruled that the judicial bypass provision of the statute was unconstitutional because it failed to make sufficient provision for challenges to its validity, was vague, and made no provision for testimony to controvert that of the minor. The court denied the petition for waiver and required T.W. to obtain parental consent under the remaining provisions of the statute.
The district court found that the statute’s judicial alternative to parental consent was unconstitutionally vague, permitting arbitrary denial of a petition, and noted the following defects: failure to provide for a record hearing, lack of guidelines relative to admissible evidence, a brief forty-eight-hour time limit, and failure to provide for appointed counsel for an indigent minor. The court declared the entire statute invalid, quashed the trial court’s order requiring parental consent, and ordered the petition dismissed. The guardian ad litem appealed to this Court. The Florida Attorney General was granted permission to appear as amicus curiae. The guardian filed a number of motions to block the abortion but was unsuccessful and T.W. lawfully ended her pregnancy, which would normally moot the issue of parental consent.
Because the questions raised are of great public importance and are likely to recur, we accept jurisdiction despite T.W.’s abortion. See Holly v. Auld, 450 So.2d 217 *1190 (Fla.1984). Preliminarily, we find that the appointment of a guardian ad litem for the fetus was clearly improper. The attorney general alone has standing to pursue this appeal.[3]
It cannot be doubted that the constitutional integrity of the laws of Florida is a matter in which the State has great interest, or that the State is a proper, but not necessary, party to any determination of the constitutionality of any state statute. Since many constitutional challenges are raised in a trial court which can be simply disposed of as obviously meritless, it would be futile for the Attorney General to defend each statute against all constitutional challenges at the trial level. However, where the trial court finds a statute to be unconstitutional, it is proper that the Attorney General appear on appeal to defend the statute.
State ex rel. Shevin v. Kerwin, 279 So.2d 836, 837-38 (Fla.1973).
The seminal case in United States abortion law is Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). There, the Court ruled that a right to privacy implicit in the fourteenth amendment embraces a woman’s decision concerning abortion. Autonomy to make this decision constitutes a fundamental right and states may impose restrictions only when narrowly drawn to serve a compelling state interest. The Court recognized two important state interests, protecting the health of the mother and the potentiality of life in the fetus, and ruled that these interests become compelling at the completion of the first trimester of pregnancy and upon viability of the fetus (approximately at the end of the second 'trimester), respectively. Thus, during the first trimester, states must leave the abortion decision to the woman and her doctor; during the second trimester, states may impose measures to protect the mother’s health; and during the period following viability, states may possibly forbid abortions altogether. Although the workability of the trimester system and the soundness of Roe itself have been seriously questioned in Webster v. Reproductive Health Services, — U.S. -, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), the decision for now remains the federal law. Subsequent to Roe, the Court issued several decisions dealing directly with the matter of parental consent for minors seeking abortions. See Planned Parenthood Ass’n v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983); City of Akron v. Akron Center for Reproductive Health Inc., 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion); Planned Parenthood v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).
To be held constitutional, the instant statute must pass muster under both the federal and state constitutions. Were we to examine it solely under the federal Constitution, our analysis necessarily would track the decisions noted above. However, Florida is unusual in that it is one of at least four states having its own express constitutional provision guaranteeing an independent right to privacy, see Note, Toward a Right of Privacy as a Matter of State Constitutional Law, 5 Fla.St.U.L. Rev. 632, 691 (1977) (others include Alaska, California, and Montana),[4] and we opt to examine the statute first under the Florida Constitution. If it fails here, then no further analysis under federal law is required.
*1191 As we noted in Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544 (Fla.1985), the essential concept of privacy is deeply rooted in our nation’s political and philosophical heritage. Justice Brandeis in Olmstead v. United States, 211 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting), eloquently expressed the fundamental and wide-ranging “right to be let alone”:
The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man’s spiritual nature, of his feelings and of his intel-lect_ They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone — the most comprehensive of rights and the right most valued by civilized men.
Pursuant to this principle, the United States Supreme Court has recognized a privacy right that shields an individual’s autonomy in deciding matters concerning marriage, procreation, contraception, family relationships, and child rearing and education. Roe, 410 U.S. at 152-53, 93 S.Ct. at 726-27. It is this general right to privacy that protects against the public disclosure of private matters. Nixon v. Administrator of General Servs., 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The Court, however, has made it clear that the states, not the federal government, are the final guarantors of personal privacy: “But the protection of a person’s general right to privacy — his right to be let alone by other people —is, like the protection of his property and of his very life, left largely to the law of the individual States.” Katz v. United States, 389 U.S. 347, 350-51; 88 S.Ct. 507, 510-11, 19 L.Ed.2d 576 (1967) (footnotes omitted; emphasis in original). While the federal Constitution traditionally shields enumerated and implied individual liberties from encroachment by state or federal government, the federal Court has long held that state constitutions may provide even greater protection. See, e.g., Prune-yard Shopping Center v. Robins, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980) (“Our reasoning ... does not ex pro-prio vigore limit the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution.”).
State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court’s interpretation of federal law. The legal revolution which has brought federal law to the fore must not be allowed to inhibit the independent protective force of state law — for without it, the full realization of our liberties cannot be guaranteed.
W. Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L.Rev. 489, 491 (1977).
In 1980, Florida voters by general election amended our state constitution to provide:
Section 23. Right of privacy. — Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public’s right of access to public records and meetings as provided by law.
Art. I, § 23, Fla. Const. This Court in Winfield described the far-reaching impact of the Florida amendment:
The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words “unreasonable” or “unwarranted” before the phrase “governmental intrusion” in order to make the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and sue- *1192 cinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.
Winfield, 477 So.2d at 548. In other words, the amendment embraces more privacy interests, and extends more protection to the individual in those interests, than does the federal Constitution.
Consistent with this analysis, we have said that the amendment provides “an explicit textual foundation for those privacy interests inherent in the concept of liberty which may not otherwise be protected by specific constitutional provisions.”[5] Rasmussen v. South Fla. Blood Serv., 500 So.2d 533, 536 (Fla.1987) (footnote omitted). We have found the right implicated in a wide range of activities dealing with the public disclosure of personal matters. See Barron v. Florida Freedom Newspapers, 531 So.2d 113 (Fla.1988) (closure of court proceedings and records); Rasmussen (confidential donor information concerning AIDS-tainted blood supply); Winfield (banking records); Florida Bd. of Bar Examiners re: Applicant, 443 So.2d 71 (Fla. 1983) (bar application questions concerning disclosure of psychiatric counselling). Florida courts have also found the right involved in a number of cases dealing with personal decisionmaking. See Public Health Trust v. Wons, 541 So.2d 96 (Fla. 1989) (refusal of blood transfusion that is necessary to sustain life); Corbett v. D’Alessandro, 487 So.2d 368 (Fla. 2d DCA), review denied, 492 So.2d 1331 (Fla.1986) (removal of nasogastric feeding tube from adult in permanent vegetative state); In re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984) (removal of life support system from brain-dead infant); see also Satz v. Perlmutter, 379 So.2d 359 (Fla. 1980) (removal of respirator from competent adult, decided prior to passage of privacy amendment under general right of privacy).
The privacy section contains no express standard of review for evaluating the lawfulness of a government intrusion into one’s private life, and this Court when called upon, adopted the following standard:
Since the privacy section as adopted contains no textual standard of review, it is important for us to identify an explicit standard to be applied in order to give proper force and effect to the amendment. The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy. The burden can be met by demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means.
Winfield, 477 So.2d at 547. When this standard was applied in disclosural cases, government intrusion generally was upheld as sufficiently compelling to overcome the individual’s right to privacy. We reaffirm, however, that this is a highly stringent standard, emphasized by the fact that no government intrusion in the personal deci-sionmaking eases cited above has survived.
Florida’s privacy provision is clearly implicated in a woman’s decision of whether or not to continue her pregnancy. We can conceive of few more personal or private decisions concerning one’s body that one can make in the course of a lifetime, except perhaps the decision of the terminally ill in their choice of whether to discontinue necessary medical treatment. See Wons; Perlmutter.
Of all decisions a person makes about his or her body, the most profound and intimate relate to two sets of ultimate questions: first, whether, when, and how one’s body 'is to become the vehicle for another human being’s creation; second, when and how — this time there is no question of “whether” — one’s body is to terminate its organic life.
*1193 L. Tribe, American Constitutional Law 1337-38 (2d ed. 1988). The decision whether to obtain an abortion is fraught with specific physical, psychological, and economic implications of a uniquely personal nature for each woman. See Roe, 410 U.S. at 153, 93 S.Ct. at 727. The Florida Constitution embodies the principle that “[f]ew decisions are more personal and intimate, more properly private, or more basic to individual dignity and autonomy, than a woman’s decision ... whether to end her pregnancy. A woman’s right to make that choice freely is fundamental.” Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 106 5.Ct. 2169, 2185, 90 L.Ed.2d 779 (1986).
The next question to be addressed is whether this freedom of choice concerning abortion extends to minors. We conclude that it does, based on the unambiguous language of the amendment: The right of privacy extends to “[e]very natural person.” Minors are natural persons in the eyes of the law and “[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, ... possess constitutional rights.” Danforth, 428 U.S. at 74, 96 S.Ct. at 2843. See also Ashcroft; City of Akron; H.L. v. Matheson, 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981); and Bellotti.
II.
Common sense dictates that a minor’s rights are not absolute; in order to overcome these constitutional rights, a statute must survive the stringent test announced in Winfield: The state must prove that the statute furthers a compelling state interest through the least intrusive means. The Roe Court recognized two state interests implicated in the abortion decision: the health of the mother and the potentiality of life in the fetus. Under Roe, the health of the mother does not become a compelling state interest until immediately following the end of the first trimester because until that time, “mortality in abortion may be less than mortality in normal childbirth. Roe, 410 U.S. at 163, 93 S.Ct. at 731. Due to technological developments in second-trimester abortion procedures, the point at which abortions are safer than childbirth may have been extended into the second trimester. See City of Akron, 462 U.S. at 429 n. 11, 103 S.Ct. at 2492 n. 11. We nevertheless adopt the end of the first trimester as the time at which the state’s interest in maternal health becomes compelling under Florida law because it is clear that prior to this point no interest in maternal health could be served by significantly restricting the manner in which abortions are performed by qualified doctors, whereas after this point the matter becomes a genuine concern. See id. Under Florida law, prior to the end of the first trimester, the abortion decision must be left to the woman and may not be significantly restricted by the state. Following this point, the state may impose significant restrictions only in the least intrusive manner designed to safeguard the health of the mother.[6] Insignificant burdens during either period must substantially further important state interests. Compare id. at 430, 103 S.Ct. at 2492 (“Certain regulations that have no significant impact on the woman’s exercise of her right may be permissible where justified by important state health objectives.”).
Under Roe, the potentiality of life in the fetus becomes compelling at the point in time when the fetus becomes viable, which the Court defined as the time at which the fetus becomes capable of meaningful life outside the womb, albeit with artificial aid. Roe, 410 U.S. at 160, 163, 93 S.Ct. at 730, 731. Under our Florida Constitution, the state’s interest becomes compelling upon viability, as defined below. Until this point, the fetus is a highly specialized set of cells that is entirely dependent upon the mother for sustenance. No other member of society can provide this nourishment. The mother and fetus are so inextricably intertwined that their interests can be said to coincide. Upon viability, however, socie *1194 ty becomes capable of sustaining the fetus, and its interest in preserving its potential for life thus becomes compelling.[7] See Webster, 109 S.Ct. at 3075 (Blackmun, J., concurring/dissenting). Viability under Florida law occurs at that point in time when the fetus becomes capable of meaningful life outside the womb through standard medical measures. Under current standards, this point generally occurs upon completion of the second trimester. See id. at 3075 n. 9 (no medical evidence exists indicating that technological improvements will move viability forward beyond twenty-three to twenty-four weeks gestation within the foreseeable future due to the anatomic threshold of fetal development). Following viability, the state may protect its interest in the potentiality of life by regulating abortion, provided that the mother’s health is not jeopardized.
III.
The challenged statute fails because it intrudes upon the privacy of the pregnant minor from conception to birth. Such a substantial invasion of a pregnant female’s privacy by the state for the full term of the pregnancy is not necessary for the preservation of maternal health or the potentiality of life. However, where parental rights over a minor child are concerned, society has recognized additional state interests — protection of the immature minor and preservation of the family unit. For reasons set out below, we find that neither of these interests is sufficiently compelling under Florida law to override Florida’s privacy amendment.
In evaluating the validity of parental consent and notice statutes, the federal Court has taken into consideration the state’s interests in the well-being of the immature minor, see Ashcroft; City of Akron; Matheson; Bellotti; Danforth, and in the integrity of the family, see Matheson; Bel-lotti. In Bellotti, the Court set forth three reasons justifying- the conclusion that states can impose more restrictions on the right of minors to obtain abortions than they can impose on the right of adults: “[T]he peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.” Bellotti, 443 U.S. at 634, 99 S.Ct. at 3043. The Court pointed out that “during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them,!’ id. at 635, 99 S.Ct. at 3044, and that the role of parents in “teaching, guiding, and inspiring by precept and example is essential to the growth of young people into mature, socially responsible citizens,” id. at 638, 99 S.Ct. at 3045. In assessing the validity of parental consent statutes, the federal Court applied a relaxed standard; the state interest need only be “significant,” not “compelling,” to support the *1195 intrusion.[8]
We agree that the state’s interests in protecting minors and in preserving family unity are worthy objectives. Unlike the federal Constitution, however, which allows intrusion based on a “significant” state interest, the Florida Constitution requires a “compelling” state interest in all cases where the right to privacy is implicated. Winfield. We note that Florida does not recognize these two interests as being sufficiently compelling to justify a parental consent requirement where procedures other than abortion are concerned. Section 743.065, Florida Statutes (1987), provides:
743.065 Unwed pregnant minor or minor mother; consent to medical services for minor or minor’s child valid.—
(1) An unwed pregnant minor may consent to the performance of medical or surgical care or services relating to her pregnancy by a hospital or clinic or by a physician licensed under chapter 458 or chapter 459, and such consent is valid and binding as if she had achieved her majority.
(2) An unwed minor mother may consent to the performance of medical or surgical care or services for her child by a hospital or clinic or by a physician licensed under chapter 458 or chapter 459, and such consent is valid and binding as if she had achieved her majority.
(3) Nothing in this act shall affect the provisions of s. 390.001 [the abortion statute].
Under this statute, a minor may consent, without parental approval, to any medical procedure involving her pregnancy or her existing child — no matter how dire the possible consequences—except abortion. Under In re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984) (parents permitted to authorize removal of life support system from infant in permanent coma), this could include authority in certain circumstances to order life support discontinued for a comatose child. In light of this wide authority that the state grants an unwed minor to make life-or-death decisions concerning herself or an existing child without parental consent, we are unable to discern a special compelling interest on the part of the state under Florida law in protecting the minor only where abortion is concerned. We fail to see the qualitative difference in terms of impact on the well-being of the minor[9] between allowing the life of an existing child to come to an end and terminating a pregnancy, or between undergoing a highly dangerous medical procedure on oneself and undergoing a far less dangerous procedure to end one’s pregnancy. If any qualitative difference exists, it certainly is' insufficient in terms of state interest. Although the state does have an interest in protecting minors, “the selective approach employed by the legislature evidences the limited nature of the ... interest being furthered by these provisions.” Ivey v. Bacardi Imports Co., 541 So.2d 1129, 1139 (Fla.1989). We note that the state’s adoption act similarly contains no requirement that a minor obtain parental consent prior to placing a child up for adoption, even though this decision clearly is fraught with intense emotional and societal consequences. See ch. 63, Fla.Stat. (1987).
The parental consent statute also fails the second prong of the Winfield standard, i.e., it is not the least intrusive means of furthering the state interest. Any inquiry under this prong must consider procedural safeguards relative to the *1196 intrusion. As pointed out by the district court below, although the instant statute does provide for a judicial bypass procedure, it makes no provision for a lawyer for the minor or for a record hearing.[10] In In re D.B. and D.S., 385 So.2d 83 (Fla.1980), we recognized that an individual’s interest in preserving the family unit and raising children is fundamental, and that in any proceeding involving permanent termination of parental rights, counsel for'the affected party is constitutionally required. As noted above, we have determined that a woman's right to decide whether or not to continue her pregnancy constitutes a fundamental constitutional right and this right extends to minors. “[T]here are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible.” Bellotti, 443 U.S. at 642, 99 S.Ct. at 3047. In proceedings wherein a minor can be wholly deprived of authority to exercise her fundamental right to privacy, counsel is required under our state constitution. Examining a comparable statute under federal law, the United States Court of Appeals, Seventh Circuit, pointed out:
If the waiver procedure ... simply involved speaking to the judge in order to demonstrate maturity, counsel might not seem essential. But no legal proceeding is that simple. A minor, completely untrained in the law, needs legal advice to help her understand how to prepare her case, what papers to file, and how to appeal if necessary. Requiring an indigent minor to handle her case all alone is to risk deterring many minors from pursuing their rights because they are unable to understand how to navigate the complicated court system on their own or because they are too intimidated by the seeming complexity to try.
Indiana Planned Parenthood Affiliates Ass’n v. Pearson, 716 F.2d 1127, 1138 (7th Cir.1983). We note that even the state in Pearson conceded that “ ‘[tjhere can be no doubt that in a case dealing with the abortion decision, refusal to assign counsel to an indigent minor would be reversible error.’” Id.
Without a record hearing to memorialize a trial judge’s reasons for denying a petition for waiver of parental consent, appellate review is meaningless. See In re: J. V., a child, 548 So.2d 749 (Fla. 4th DCA 1989) (without record hearing, appellate review is “illusory and meaningless”); In re: E.B.L., a minor, 544 So.2d 333 (Fla. 2d DCA 1989) (appellate court constrained to reverse denial of petition where record nonexistent). Without a record, the appellate court will be unable to determine whether the denial was lawful or was simply based on the trial judge’s moral, religious, or political beliefs. Additionally, we note that the statute fails to make any exception for emergency or therapeutic abortions, procedures clearly no different, in terms of impact upon the minor, from other medical procedures that a minor can unilaterally authorize under section 743.065. Accordingly, we conclude that the statute fails to provide adequate procedural safeguards.
Based on the foregoing analysis of our state law, we hold that section 390.-001(4)(a), Florida Statutes (Supp.1988), violates the Florida Constitution. Accordingly, no further analysis under federal law is required. We expressly decide this case on state law grounds and cite federal precedent only to the extent that it illuminates Florida law. We approve the district court’s decision.
It is so ordered.
BARKETT and KOGAN, JJ., concur.
EHRLICH, C.J., concurs specially with an opinion.
OVERTON, J., concurs in part and dissents in part with an opinion with which GRIMES, J., concurs.
GRIMES, J., concurs in part and dissents in part with an opinion.
McDONALD, J., dissents with an opinion.

.Section 390.001(4)(a), Florida Statutes (Supp. 1988), provides:
1. If the pregnant woman is under 18 years of age and unmarried, in addition to her written request, the physician shall obtain the written informed consent of a parent, custodian, or legal guardian of such unmarried minor, or the physician may rely on an order of the circuit court, on petition of the pregnant unmarried minor or another person on her behalf, authorizing, for good cause shown, such termination of pregnancy without the written consent of her parent, custodian, or legal guardian. The cause may be based on: a showing that the minor is sufficiently mature to give an informed consent to the procedure; the fact that a parent, custodian, or legal guardian unreasonably withheld consent; the minor’s fear of physical or emotional abuse if her parent, custodian, or legal guardian were requested to consent; or any other good cause shown. At its discretion, the court may enter its order ex parte. If the court determines that the minor is sufficiently mature to give an informed consent to the procedure, the court shall issue an order authorizing the procedure without the consent of her parent, custodian, or legal guardian. If the court determines that the minor is not sufficiently mature, the court shall determine the best interest of the minor and enter its order in accordance with such determination.
2. The court shall ensure that a minor who files a petition pursuant to this paragraph will remain anonymous. The minor may participate in proceedings in the court on her own or through another person on her behalf. Court proceedings brought pursuant to this paragraph are confidential and shall be given the priority necessary for the court to reach a decision promptly. The court shall rule within 48 hours after the petition is filed; but the 48-hour limitation may be extended at the request of the minor. An expedited anonymous appeal shall be made available to a minor who files a petition pursuant to this paragraph.
3. The Supreme Court may promulgate any rules it considers necessary to ensure that proceedings brought pursuant to this paragraph are handled expeditiously and are kept confidential.

. Florida Rule of Civil Procedure 1.612 provides:
TERMINATION OF PREGNANCIES OF UNMARRIED MINORS
(a) Commencement. The action shall be commenced by filing a petition in circuit court by the unmarried minor or another person on her behalf.
(b) Petition. No defect in the form of the petition shall impair substantial rights and no defect in the statement of jurisdictional facts shall render any proceeding void. The petition for termination of pregnancy shall state:
(1) The interest of the petitioner and his or her name and address.
(2) The date of birth of the minor.
(3) The name, last known address, and telephone number of the parents, custodian, or legal guardian of the minor.
(4) That the minor is under age of 18 years and unmarried.
(5) That the minor is pregnant.
(6) A short and plain statement of the facts and a reasonable basis for establishing any of the following:
(A) That the minor is sufficiently mature to give an informed consent to the procedure; or
(B) That consent of the parent, custodian, or legal guardian is being unreasonably withheld; or
(C) That the facts justify the minor's fear of physical or emotional abuse if her parent(s), custodian(s), or legal guardian(s) were requested to consent; or
(D) Any other good cause.
(c) Hearing. At the discretion of the court an order on the petition may be entered ex parte. If the court requires a hearing, it shall be held expeditiously. The clerk shall give notice to the minor and any petitioner on her behalf before the hearing.
(d) Judgment. The court shall enter a judgment within 48 hours after the petition is filed unless the time is extended at the request of the minor. The judgment shall recite findings in support of the ruling. If no judgment is entered within the time period, the petition shall be deemed granted and the clerk shall place a certificate to this effect in the file.
(e) Confidentiality. The proceedings shall be confidential so that the minor shall remain anonymous. The file shall be sealed unless otherwise ordered by the court. If the peti *1189 tion is granted, the clerk shall furnish a certified copy of the judgment or clerk's certificate to the petitioner for delivery to the minor’s physician.
Florida Rule of Appellate Procedure 9.110 provides in part:
(/) Exception. Where an unmarried minor or another person on her behalf appeals an order denying a petition for termination of pregnancy, the district court of appeal shall render its decision on the appeal as expeditiously as possible and by no later than- ten days from the filing of the notice of appeal. Briefs or oral argument may be ordered at the discretion of the district court of appeal. If no decision is rendered within the foregoing time period, the order shall be deemed reversed, the petition shall be deemed granted, and the clerk shall place a certificate to this effect in the file. The appeal and all proceedings thereon shall be confidential in order that the minor shall remain anonymous. The file shall remain sealed unless otherwise or-; dered by the court. Should the petition be[1] granted, the clerk shall furnish the petitioner a certified copy of the decision or clerk's certificate for delivery to the minor’s physician.

. We are compelled to comment on the trial judge’s finding that the court, “as the only entity otherwise involved [i]n the proceeding which could possibly protect the state’s interest," could have standing to challenge the constitutionality of the statute. Under no circumstances is a trial judge permitted to argue one side of a case as though he were a litigant in the proceedings. The survival of our system of justice depends on the maintenance of the judge as an independent and impartial decisionmaker. A judge who becomes an advocate cannot claim even the pretense of impartiality.

. See Alaska Const. art. I, § 22; Cal. Const. art. I, § 1; Mont. Const. art. II, § 10. A second group of states has incorporated the privacy right into a constitutional provision dealing with additional matters. See Ariz. Const art. II, § 8; Haw. Const. art I, §§ 6, 7; III. Const. art. I, §§ 6, 12; La. Const. art. I, § 5; S.C. Const. art. I, § 10; Wash. Const. art I, § 7.

. Justice White has pointed out that "[fjunda-mental liberties and interests are most clearly present when the Constitution provides specific textual recognition of their existence and importance.” Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 106 S.Ct. 2169, 2194, 90 L.Ed.2d 779 (1986) (White, J., dissenting).

. Restrictions to protect the state's interest in the potentiality of life, as explained infra, also may be imposed, but only after viability, as defined infra, is reached.

. As to the argument that the state's interest in the potentiality of life is compelling throughout pregnancy, Justice Stevens has noted:
I should think it obvious that the state’s interest in the protection of an embryo — even if that interest is defined as “protecting those who will be citizens," — increases progressively and dramatically as the organism’s capacity to feel pain, to experience pleasure, to survive, and to react to its surroundings increased day by day. The development of a fetus — and pregnancy itself — are not static conditions, and the assertion that the government's interest is static simply ignores this reality.
Nor is it an answer to argue that life itself is not a static condition, and that "there is no nonarbitrary line separating a fetus from a child, or indeed, an adult human being." For, unless the religious view that a fetus is a "person” is adopted ... there is a fundamental and well-recognized difference between a fetus and a human being; indeed, if there is not such a difference, the permissibility of terminating the life of a fetus could scarcely be left to the will of the state legislatures. And if distinctions may be drawn between a fetus and a human being in terms of the state interest in their protection — even though the fetus represents one of "those who will be citizens" — it seems to me quite odd to argue that distinctions may not also be drawn between the state interest in protecting the freshly fertilized egg and the state interest in protecting the 9-month-gestated, fully sentient fetus on the eve of birth. Recognition of this distinction is supported not only by logic, but also by history and by our shared experiences.
Thornburgh, 106 S.Ct. at 2188 (Stevens, J., concurring) (footnotes and citations omitted).

. See City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 427 n. 10, 103 S.Ct. 2481, 2491 n. 10, 76 L.Ed.2d 687 (1983) C'[T]he Court has repeatedly recognized that, in view of the unique status of children under the law, the States have a ‘significant’ interest in certain abortion regulations aimed at protecting children 'that is not present in the case of an ’ adult.’ ”); H. L. v. Matheson, 450 U.S. 398, 441 n. 32, 101 S.Ct. 1164, 1188 n. 32, 67 L.Ed.2d 388 (1981) (Marshall, J., dissenting) ("Although it may seem that the minor's privacy right is somehow less fundamental because it may be overcome by a ‘significant state interest,’ the more sensible view is that state interests inapplicable to adults may justify burdening the minor’s right.’’).

. Having already examined the state’s interest in the potentiality of life in the fetus, we are concerned here only with the state’s interest in the well-being of the minor.

. By contrast, the Missouri consent statute upheld in Planned Parenthood Ass’n v. Ashcroft, 462 U.S. 476, 479 n. 4, 103 S.Ct. 2517, 2519 n. 4, 76 L.Ed.2d 733 (1983), provided for a record hearing and appointed counsel.