714 So.2d 580 (1998)
Judy Madsen JOHNSON and Operation Rescue, et al., Appellants,
v.
WOMEN'S HEALTH CENTER, INC., et al., Appellees.
Nos. 96-3624, 97-89.
District Court of Appeal of Florida, Fifth District.
July 2, 1998.
*581 Mathew D. Staver, Frederick H. Nelson, Nicole Arfaras Kerr, and Christopher J. Weiss, Orlando, for Appellants Judy Madsen Johnson, Ed Martin, and Shirley Hobbs.
John Randolph Spon, Jr., Heathrow, and Jay Alan Sekulow and Walter M. Weber, Washington, DC, and John G. Stepanovich, Virginia Beach, VA, for Appellants Operation Rescue, Patrick Mahoney, Randall Terry, and Bruce Cadle.
Susan A. England, Fern Park, and Steven G. Gey, Tallahassee, and Scott R. Rost of Doran, Walters, Rost & Wolfe, Daytona Beach, for Appellees.
THOMPSON, Judge.
This is the consolidated appeal of appellate cases no 97-89 and no 96-3624. Appellants Judy Madsen Johnson, Ed Martin, Shirley Hobbs, Operation Rescue, Patrick Mahoney, Randall Terry, and Bruce Cadle (respondents below) take this appeal from an injunction which was issued after remand from the United States Supreme Court.
The appellants are against abortion, and had been conducting protest activities at the Aware Woman Clinic, at the home of a clinic nurse, and at a motel at which a clinic physician had stayed. The circuit court entered an injunction against the appellants, and then an amended injunction. In reviewing the amended injunction, the United States Supreme Court held that injunctive relief was appropriate:
The Florida Supreme Court concluded that numerous significant government interests are protected by the injunction. It noted that the State has a strong interest in protecting a woman's freedom to seek lawful medical or counseling services in connection with her pregnancy. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); In re T W, 551 So.2d 1186, 1193 (Fla.1989). The State also has a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks, and in protecting the property rights of all its citizens. [Operation Rescue v. Women's Health Center, Inc.,] 626 So.2d [664], 672 [ (Fla.1993) ]. In addition, the court believed that the State's strong interest in residential privacy, acknowledged in Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), *582 applied by analogy to medical privacy. 626 So.2d, at 672. The court observed that while targeted picketing of the home threatens the psychological well-being of the "captive" resident, targeted picketing of a hospital or clinic threatens not only the psychological but also the physical, well-being of the patient held "captive" by medical circumstance. Id., at 673. We agree with the Supreme Court of Florida that the combination of these governmental interests is quite sufficient to justify an appropriately tailored injunction to protect them.
Madsen v. Women's Health Center, Inc., 512 U.S. 753, 767-768, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (citing Operation Rescue v. Women's Health Center, Inc., 626 So.2d 664 (Fla.1993)).
However, the Supreme Court held that certain portions of the injunction burdened more speech than necessary to serve those significant government interests, and that they thus violated the free speech clause of the First Amendment of the United States Constitution. Accordingly, the Court struck the offending provisions, and remanded the case to the Florida Supreme Court, which ordered the circuit court "to amend its injunction to conform with the dictates of the United States Supreme Court." Operation Rescue v. Women's Health Center, Inc., 644 So.2d 86 (Fla.1994). The circuit court amended the offending provisions, and the appellants take this appeal from the modified amended injunction.
The appellants contend that the circuit court had no authority on remand to amend the provisions found offensive by the United States Supreme Court, but was authorized only to strike the provisions (already) stricken by the Supreme Court. We disagree. There is nothing in either Madsen or in the Florida Supreme Court's order remotely suggesting that the injunction could not be amended to conform to the reasoning and holdings of Madsen. Nor do we agree with the appellants that the circuit court could not amend the injunction unless it held another evidentiary hearing.
Appellants also attack the merits of various provisions of the modified amended injunction. They contend that the circuit court erred in enjoining them from using "images ... which convey threats, veiled or otherwise." This contention is not well taken because, in striking the earlier provision which imposed a "blanket ban," Madsen, 512 U.S. at 773, 114 S.Ct. 2516 on images observable from within the clinic, the Supreme Court stated, "[c]learly, threats to patients or their families, however communicated, are proscribable under the First Amendment[,][b]ut rather than prohibiting the display of signs that could be interpreted as threats or veiled threats, the state court issued a blanket ban on all `images observable.'" Id. In amending the blanket ban to one proscribing threats or veiled threats, the circuit court complied with the dictates of Madsen.
In the earlier injunction, the circuit court enjoined protest activity within 300 feet of the residences and temporary lodging places of clinic staff. The court found that protestors had approached the residences or temporary lodging places of clinic workers. "These approaches," the trial court stated, "included not only direct communication with the occupants (sometimes the `home alone' minor children of the occupants) but also carrying signs, walking up and down the sidewalk or street in front of the residence, shouting at passers-by, contacting (ringing doorbells of) neighbors, and providing literature identifying the clinic employee as a `baby killer.'" The trial court stated that on one occasion protesters went to the lobby of the motel at which a staff physician was staying and yelled "baby killer" and "child murderer."
Although the Supreme Court recognized the state's strong interest in protecting the well-being, tranquility, and privacy of the home, it held that the 300-foot residential buffer zone burdened more speech than necessary, because it would preclude "general marching through residential neighborhoods, or even walking a route in front of an entire block of houses," id. at 774-775, 114 S.Ct. 2516. The Supreme Court stated, "it appears that a limitation on the time, duration *583 of picketing, and number of pickets outside a smaller zone could have accomplished the desired result." Id. at 775, 114 S.Ct. 2516. On remand, the circuit court amended the provision to allow for generalized picketing, but with limitations on the times that picketing could be conducted, the duration of the picketing, and the number of picketers. In addition, the modified amended injunction required the appellants, when they desired to demonstrate within 300 feet of a staff residence, to remain on the side of the street away from the residence. We find no error in this provision. See Douglas v. Brownell, 88 F.3d 1511 (8th Cir.1996) (upholding ordinance barring picketing in front of targeted residence and two adjacent residences, but allowing picketing on sidewalk across street).
The earlier injunction contained a "no-approach" provision which enjoined the appellants, in an area within 300 feet of the clinic, from physically approaching anyone seeking the clinic's services, unless the person indicated a desire to communicate. The Supreme Court held that this provision burdened more speech than necessary:
The state court ordered that petitioners refrain from physically approaching any person seeking services of the clinic "unless such person indicates a desire to communicate" in an area within 300 feet of the clinic. The state court was attempting to prevent clinic patients and staff from being "stalked" or "shadowed" by the petitioners as they approached the clinic. See International Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 684, 112 S.Ct. 2701, 2708, 120 L.Ed.2d 541 (1992) ("[F]ace-to-face solicitation presents risks of duress that are an appropriate target of regulation. The skillful, and unprincipled, solicitor can target the most vulnerable, including those accompanying children or those suffering physical impairment and who cannot easily avoid the solicitation").
But it is difficult, indeed, to justify a prohibition on all uninvited approaches of persons seeking the services of the clinic, regardless of how peaceful the contact may be, without burdening more speech than necessary to prevent intimidation and to ensure access to the clinic. Absent evidence that the protesters' speech is independently proscribable (i.e., "fighting words" or threats), or is so infused with violence as to be indistinguishable from a threat of physical harm, see Milk Wagon Drivers [Union of Chicago, Local 753 v. Meadowmoor Dairies Inc.] 312 U.S. [287], at 292-293, 61 S.Ct. [552], at 554-555[, 85 L.Ed. 836 (1941)], this provision cannot stand. "As a general matter, we have indicated that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." Boos v. Barry, 485 U.S. 312, 322, 108 S.Ct., at 1164, 99 L.Ed.2d 333 (internal quotation marks omitted). The "consent" requirement alone invalidates this provision; it burdens more speech than is necessary to prevent intimidation and to ensure access to the clinic.
Id. at 773-774, 114 S.Ct. 2516 (footnote omitted). (Emphasis in original).
On remand, the court amended this provision:
5. Outside of the 36 foot buffer zone, respondents and those acting in concert with them may physically approach persons seeking the services of the clinic to engage in non-threatening communications and to distribute literature. However, at all times and on all days, should any individual decline such communication, otherwise known as "sidewalk counseling," that person shall have the absolute right to leave or walk away and the respondents shall not encircle, surround, impede the progress of, harass, threaten or physically or verbally abuse those individuals who choose not to communicate with them.
We disagree with the appellants' contention that this provision is vague, overbroad, and unlimited in geographic scope. Since the provision applies to "persons seeking the services of the clinic" it obviously applies within the vicinity of the clinic. Further, the terminology is not vague or overbroad, but enjoins assault and other conduct of a criminal and/or tortious nature.
*584 The modified amended injunction also imposed a no-approach zone with respect to clinic staff at their residences:
ORDERED AND ADJUDGED that at all times on all days, respondents will have the right of contact with persons protected hereby so long as it is outside of the Clinic buffer zone. However such contact by a person protected hereby as it relates to a contact at such person's residence or the curtilage thereof is limited to conduct transmitted by the resident to a respondent at a distance from and a time prior to the contact and shall not include the uninvited ringing of a doorbell or knock on a door. Any such contact may be cancelled by such person by words spoken that indicate a desire to end the contact, such as "stop," "withdraw," "back off," "get away," "leave me alone," or words or actions of similar import. Where such desire to end the contact is made known to a respondent, he/she must immediately terminate the contact and leave the residence of the person protected hereby.
The appellants state that the residential no-approach provision should have been stricken for the same reason that the clinic no-approach provision was stricken. The area around the clinic, however, is a public forum, whereas a residence is "`the last citadel of the tired, the weary, and the sick'" id. at 775, 114 S.Ct. 2516 (quoting Frisby), and the state's interest in protecting "`the well-being, tranquility, and privacy of the home is certainly of the highest order in a civilized society.'" id. (quoting Frisby ). The respondents' attempt to analogize a residence and a public forum having failed, this issue is without merit.
The earlier injunction contained the following restriction:
(9) At all times on all days, from encouraging, inciting, or securing other persons to commit any of the prohibited acts listed herein.
The appellants did not previously contend that this provision was erroneous, see Madsen, Operation Rescue, 626 So.2d 664, and it was left intact in the injunction now on appeal.
In this appeal the appellants argue that the provision violates the constitution because "it cannot be illegal to induce someone not bound by the injunction to do something which is that person's constitutional right." In addition, citing National Organization For Women v. Operation Rescue, 37 F.3d 646 (D.C.Cir.1994), which held the term "encouraging" to be vague, the appellants argue that the term should be stricken from the injunction. We do not address the merits of this issue because, by failing to raise it in the earlier appeal, the appellants have waived it. See, e.g., Marine Midland Bank Central v. Cote, 384 So.2d 658 (Fla. 5th DCA 1980) ("parties have the right to appeal any matter by which they may be aggrieved and their failure to do so acts as an acceptance of the propriety of the matter").
Last, the appellants contend that the circuit court violated the mandate of the Supreme Court with respect to the 36-foot "buffer zone" around the clinic. The injunction reviewed by the Supreme Court enjoined the appellants from entering the 36-foot buffer zone, except that, on the eastern border of the clinic property, the buffer zone was five feet wide. The Supreme Court reviewed the buffer zone, struck as unconstitutional application of the buffer zone to neighboring real property, and, we think, upheld by implication the five-foot portion of the zone by failing to strike it.
Accordingly, the modified amended injunction is AFFIRMED.
GOSHORN and PETERSON, JJ., concur.