GRIFFIN, J.,
dissenting.
Appellant is a sixteen-year-old female who petitioned the circuit court, pursuant to Section 390.01114(4), Florida Statutes (2012), to have waived the statutory requirement that a parent be notified before the termination of her pregnancy. The statute allows for waiver of notice if the minor is sufficiently mature to make the decision without consulting the parent. Within the statute, there are seven factors specific to the minor for the court to consider in evaluating maturity, as well as the question of undue influence by a third party.
The trial court conducted a short hearing consisting of some eighteen pages of testimony. In summary, the minor testified as follows: She wished to terminate her pregnancy because at her age she was not ready for a child, and she wanted to finish high school and attend college. She is in the eleventh grade and is a “B’s and C’s” student. She wished to terminate the pregnancy without telling her mother (the only parent she lived with) because her mother is very religious, considers abortion to be murder and would oppose the procedure. If her mother found out, Appellant would be “disowned”, meaning that she would no longer have her mother’s help and support, and Appellant might have to leave the home.
When asked why Appellant thought her decision was responsible, she testified that she wanted to be fair to the child. She has no job and is in high school. “It would be significant for them [sic] to be brought up in this way.” The trial court asked, “[W]hy would you not want to have the child born and adopted?” She answered that she did not want to “hav[e] her child somewhere else” and then, later on in life, have another child. Nor did she think her mother should raise the child.
The trial court then asked if she believed there were no inherent risks with terminating the pregnancy that would outweigh the risk of going to full term. She said no. When asked if she had consulted with a medical professional, she said that she had not, but that she had found the information she needed on clinic- websites.
When the trial court asked her whether she had discussed terminating her pregnancy with anyone, she identified her boyfriend’s mother, who is a teacher at a school other than the one she attends. Her boyfriend had told her that he was “okay” with whatever she decided to do. The boyfriend’s mother offered her help. The trial court then expressed concern about “undue influence,” so the minor’s counsel offered to have the boyfriend’s mother testify. The sum total of her testimony is as follows:
COUNSEL: [C]an you tell me how long you have known the Petitioner?
WITNESS: Maybe four years casually, but pretty close the last few months.
*792 COUNSEL: What would a few months be?
WITNESS: Maybe five or six.
COUNSEL: Okay. And what have you all had conversations about regarding this pregnancy specifically?
WITNESS: When I heard she was, my first question was, what does she want to do. So, and I was told she wanted to terminate it. And I said, “Does she know what she needs to do?” And I started getting on the internet, as I am prone to do, to find out, see if I could help her.
With her young age, I didn’t know whether she was savvy to what questions to ask and what to think about. So, I went on websites, and I said, “Here, call these numbers.”
I tried to stay out of it by saying, “Call these numbers, ask these questions.” You know, the place-the clinics she called weren’t real helpful.
On the website it said that she should go first to a clinic and then be in a courtroom. But then when she called the clinic, it did not say that. It said, “We need to have permission before we see you.” So, we had thought one way and were told a different way.
COUNSEL: And what would be your position at this point if she told you that she wanted to- continue with the pregnancy until full term?
WITNESS: I’d be okay with it. It’s— I’m okay with her decision, whichever she wants to do.
COUNSEL: And do you know her parents?
WITNESS: Never met them. Not on purpose, just hasn’t happened.
COUNSEL: And these last four or five months, I assume you’ve gotten to know her because she’s spent more time at your house?
WITNESS: Yes.
COUNSEL: And how old is your son? Seventeen?
WITNESS: Uh, he’ll be — no, he’s not seventeen.
COUNSEL: Sixteen?
WITNESS: No.
COUNSEL: Eighteen?
PETITIONER: Eighteen.
THE COURT: Just turned eighteen?
WITNESS: Uh-huh.
COUNSEL: And as far as her ability to accept responsibility for this, have you all had that discussion?
WITNESS: I believe that was my initial view of it by giving her numbers and saying, ‘You need to make the phone calls.” I was — I was trying to stay out of it because — because of the nature of the age.
THE COURT: Do you have any additional questions?
DIRECT EXAMINATION:
COUNSEL: Have you had any discussions with [Appellant] about the medical procedures or any risks inherent with the procedure?
WITNESS: We started one — a conversation. And I said, you know, let’s — we can take it a step at a time. We can take, you know, this information and then do the next step with the next information, talked about it, said it’s all on a website.
You can look at it, you can read it, it tells you everything you need to know and what to expect. Did that answer your question?
COUNSEL: In your opinion, does she understand those risks?
WITNESS: Yes.
COUNSEL: And in your opinion, have you had any — if I may rephrase? Have you had any discussions about long- *793 range consequences, either physically to her person or emotionally and—
WITNESS: Yes.
COUNSEL: And in your opinion, as a result of those conversations, do you believe that she’s anticipated and evaluated those consequences?
WITNESS: Yes.
At the close of testimony, the trial court denied the petition. Four reasons were articulated by the trial court: First, the court said, “I’m not sure you understand the risks of terminating your pregnancy. I thought I heard you say there wasn’t a risk and it’s no different than carrying a child to term.” Second, the minor had had no medical advice or exam to verify that she was healthy enough to have a termination of pregnancy. Third, she had not sought the advice of clergy nor one of her own teachers. Fourth, she was the victim of undue influence by the mother of the boy who got her pregnant. Upon hearing this, counsel moved to have the hearing briefly continued so that Appellant could get this additional third-party consultation that the trial court considered essential. The trial court refused.
I begin with the fact that this sixteen-year-old girl has important constitutional rights applicable to her petition, including the right of privacy in making the termination decision. Indeed, our supreme court has said that this is one of the most personal and private decisions a person can make. In re T.W., 551 So.2d 1186, 1192 (Fla.1989). It can only be interfered with if Appellant is judicially determined to lack the maturity to make it. I recognize that, by writing, I may put her right to privacy in this matter even more at risk, but I do so for two reasons: First, the trial court abused its discretion in denying the petition. Second, for the next girl standing in Appellant’s shoes, it is important for her to have a sense of the obstacles that she may face in this district.
As for the trial court’s first stated reason that Appellant lacks the maturity to decide this issue on her own, it cites her testimony that the risk of abortion would not outweigh the risk of carrying a child to term, suggesting that she doesn’t know what she is talking about. But she is right. This has been a judicially established fact ever since In re T.W., 551 So.2d at 1195; see also North Florida Women’s Health and Counseling Services v. State, 866 So.2d 612, 634 (Fla.2003). I would also have thought it to be a matter of common knowledge.
Second, the trial court criticizes Appellant for failing to seek medical advice, but other courts have rightly rejected this “reason.” The First District Court of Appeal noted in In re Doe, 921 So.2d 753, 756 (Fla. 1st DCA 2006):
That she had not yet, at the time of the hearing, personally discussed the ramifications of a termination of pregnancy with medical professionals does not distinguish her from many other similarly situated women, both minors and adults, and any suggestion by the trial court that she is unable to determine the potential risks and ramifications is without support in the record.
See also In re Doe, 967 So.2d 1017, 1019 (Fla. 4th DCA 2007). Add to that, in this case, the testimony that when Appellant attempted to contact the clinics, she was told that they could not see her until she had gotten the waiver.
The third reason given by the trial court was perhaps the worst of all. It faulted her for not having spoken to clergy or a teacher about her decision; but the whole point of the right to privacy in this very special situation is the right NOT to talk about it to other people, especially people who are not close, or who may not be *794 useful, or who may not be trustworthy. There may have been no one else that she felt comfortable discussing her secret with. The trial court seemed to suggest that it was immature of the minor not to seek out other points of view, but the minor testified that she got what she needed from her internet searches. There is simply no evidence in this record that she was not fully awai'e of the ramifications of what she proposed to do.
Finally, there is the finding of undue influence. Other courts have said that seeking help from a trusted adult, even if the adult is the parent of the father, is a positive thing. See In re Jane Doe 06-A, 932 So.2d 499, 500 (Fla. 1st DCA 2006). I recognize that a sixteen-year-old in Appellant’s situation can be “unduly” influenced or pressured to make a decision she might not make in a vacuum, but the fact that a parent of the child’s father is consulted does not indicate undue influence. There must be some evidence of undue influence. In re Doe, 967 So.2d 1017 at 1019. In this case, there is simply no evidence of undue influence. None. Not from the Appellant or the boyfriend’s mother. To the contrary, the evidence was that her boyfriend supported whatever decision she made, and the boyfriend’s mother was okay with Appellant’s decision either way. No other suggestion appears in the record. The boyfriend’s mother’s agreement to pay for the procedure may well have nothing to do with her view of the wisdom of terminating the pregnancy. The trial court may get to make the calls on demeanor and credibility, but there has to be some word, some fact on which to base an undue influence finding. Otherwise, as here, the decision to deny the waiver is an abuse of discretion, and the decision should be reversed. It was also an abuse of discretion to refuse the motion for a short continuance to allow Appellant to do the necessary to assuage the trial court’s stated concerns, even if it meant talking to people she shouldn’t have to consult.
Because this decision is not being reversed, I hope that the foregoing will inform future petitioners about what may be persuasive to the judges in this district, and I hope that this petitioner will forgive that I have written this and perhaps have further endangered the right she sought to protect.