707 So.2d 1145 (1998)
STATE of Florida, Robert Butterworth, Attorney General for the State of Florida, The Florida Department of Health and James T. Howell, Secretary of the Department of Health, Appellants,
v.
PRESIDENTIAL WOMEN'S CENTER, Michael Benjamin, M.D., North Florida Women's Health and Counseling Services, Inc., The Birth Control Center of Tallahassee and The Feminist Women's Health Center on Behalf of themselves and their patients, Jane Doe, Appellees.
No. 97-2577.
District Court of Appeal of Florida, Fourth District.
February 18, 1998.
As Clarified April 15, 1998.
*1146 Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for appellants.
Charlene Miller Carres, Tallahassee, and Louis M. Silber and Marshall J. Osofsky of Lewis, Vegosen, Rosenbach & Silber, West Palm Beach, and Barry M. Silver and Arlene K. Lessne of Barry M. Silver, P.A., Boca Raton, for appellees.
Charles Lee Bigelow, Jr. and Victoria H. Pflug, Fort Myers, for Amicus Curiae-Theresa Kirpatrick, Patricia Ann Short, Carolyn Kollegger, Darcy K. Jones, Maureen Brown and Lisa Weidner.
J. Stephen Menton of Rutledge, Ecenia, Underwood, Purnell & Hoffman, P.A., Tallahassee, for Amicus Curiae-Florida Obstetric and Gynecologic Society.
Eve C. Gartner, New York, New York, for Amicus Curiae-Florida Association of Planned Parenthood Affiliates, Planned Parenthood of Northeast Florida, Inc., and Planned Parenthood of Southwest Florida, Inc.
KLEIN, Judge.
The Florida Legislature, in 1997, passed legislation known as the "Women's Right to Know Act," section 390.0111, Florida Statutes (1997). The appellees, clinics performing abortions and an obstetrician/gynecologist, brought this suit to have the law declared unconstitutional under the Federal and Florida Constitutions. The trial court temporarily enjoined enforcement of the law on constitutional grounds, pending a final hearing.
The trial court found a likelihood of irreparable injury to the appellees if the injunction were not granted, that the threatened injury to the appellees outweighed the potential harm caused by the granting of the injunction, that granting the temporary injunction would not disserve the public interest, and that there was a substantial likelihood that appellees would prevail on the merits. Alachua County v. Lewis Oil Co., 516 So.2d 1033 (Fla. 1st DCA 1987). The question we must determine is whether the trial court abused its discretion. Id.
Material portions of Chapter 97-151, Laws of Florida, amending Chapter 390 of the Florida Statutes follow. We have italicized those portions we address in this opinion:
(3) Consents required.A termination of pregnancy may not be performed or induced except with the voluntary and informed written consent of the pregnant woman or, in the case of a mental incompetent, the voluntary and informed written consent of her court-appointed guardian.
(a) Except in the case of a medical emergency, consent to a termination of *1147 pregnancy is voluntary and informed only if:
1. The physician who is to perform the procedure, or the referring physician, has, at a minimum, orally, in person, informed the woman of:
a. The nature and risks of undergoing or not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision of whether to terminate a pregnancy.
b. The probable gestational age of the fetus at the time the termination of pregnancy is to be performed.
c. The medical risks to the woman and fetus of carrying the pregnancy to term.
2. Printed materials prepared and provided by the department have been provided to the pregnant woman, if she chooses to view these materials, including:
a. description of the fetus.
b. A list of agencies that offer alternatives to terminating the pregnancy.
c. Detailed information on the availability of medical assistance benefits for prenatal care, childbirth, and neonatal care.
3. The woman acknowledges in writing, before the termination of pregnancy, that the information required to be provided under this subsection has been provided. Nothing in this paragraph is intended to prohibit a physician from providing any additional information which the physician deems material to the woman's informed decision to terminate her pregnancy.
(b) In the event a medical emergency exists and a physician cannot comply with the requirements for informed consent, a physician may terminate a pregnancy if he or she has obtained at least one corroborative medical opinion attesting to the medical necessity for emergency medical procedures and to the fact that to a reasonable degree of medical certainty the continuation of the pregnancy would threaten the life of the pregnant woman. In the event no second physician is available for a corroborating opinion, the physician may proceed but shall document reasons for the medical necessity in the patient's medical records.
(c) Violation of this subsection by a physician constitutes grounds for disciplinary action under s. 458.331 or s. 459.015. Substantial compliance or reasonable belief that complying with the requirements of informed consent would threaten the life or health of the patient is a defense to any action brought under this paragraph.
The appellees filed a complaint and motion for temporary injunction, asserting that a number of provisions in the law are unconstitutional. We address two of the provisions, one which changes informed consent to requiring the physician to inform the patient of what "a reasonable patient would consider material," and another, which permits only the physician doing the abortion or the referring physician to inform the patient. We conclude that the appellees have sufficiently established, at this stage of the proceeding, i.e., a review of the temporary injunction, that there is a substantial likelihood that they will prevail.
In 1980 the citizens of Florida voted to amend its constitution to include a right of privacy providing that all persons have the right "to be let alone and free from government intrusion" into their private lives. Art. I, § 23, Fla. Const. In the first case construing that right, Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla. 1985), our supreme court held that Florida's constitutional right of privacy affords greater protections than the right of privacy in the federal constitution, explaining:
The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be *1148 concluded that the right is much broader in scope than that of the Federal Constitution.
The Florida Supreme Court adopted the strict scrutiny standard of judicial review for right of privacy cases in Winfield, which involved bank records:
The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy. The burden can be met by demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means.
477 So.2d at 547.
The strict scrutiny test is extremely difficult for a statute to pass. As our supreme court has explained:
This test, which is almost always fatal in its application, imposes a heavy burden of justification upon the state and applies only when the statute operates to the disadvantage of some suspect class such as race, nationality, or alienage or impinges upon a fundamental right explicitly or implicitly protected by the constitution. Those fundamental rights to which this test applies have been carefully and narrowly defined by the Supreme Court of the United States and have included rights of a uniquely private nature such as abortions, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
In Re Estate of Greenberg, 390 So.2d 40, 42-43 (Fla.1980).
In In re T.W., 551 So.2d 1186 (Fla. 1989), the Florida Supreme Court held that a statute requiring a minor seeking an abortion to obtain parental consent or court authorization was unconstitutional. In addition to holding that the Florida right of privacy is applicable to a woman's decision to terminate her pregnancy, our supreme court reiterated what it held in Winfield, that the Florida right of privacy embraces more privacy interests, and extends more protection in those interests, than the Federal constitution. Our supreme court further noted in In re T.W. that up to that point no government intrusion into a personal decision had been found sufficiently compelling to overcome the individual's right to privacy. 551 So.2d at 1192.[1]
Our supreme court also, in In re T.W., followed Roe v. Wade in concluding that the health of a pregnant woman does not become a compelling state interest until after the end of the first trimester of pregnancy:
Under Florida law, prior to the end of the first trimester, the abortion decision must be left to the woman and may not be significantly restricted by the state. Following this point, the state may impose significant restrictions only in the least intrusive manner designed to safeguard the health of the mother.
T.W., 551 So.2d at 1193.
We first address section 390.0111(3)(a)1 which provides that a woman's consent is not voluntary or informed unless "the physician who is to perform the procedure, or the referring physician, has, at a minimum, orally, in person, informed the woman [of described information]."
Both the Presidential Women's Center and Doctor Benjamin filed affidavits. The center's affidavit explains that first trimester abortions, the vast majority of its abortions, are done by two board certified obstetrician/gynecologists three days each week. The information regarding the procedure, however, is primarily given to the women by counselors employed by the center. This is given during the first telephone call, which usually takes ten to fifteen minutes, but can last much longer. When the woman comes in for the procedure she receives more extensive counseling and information from a counselor. It is not until after that counseling that the woman meets the physician, who ascertains whether the woman has any further questions.
*1149 Both of the physicians have their own private practices, in addition to the work they perform at the center. If the physician performing the procedure must give the informed consent, it will increase the amount of time the physicians have to spend in the clinic, will increase the cost of an abortion, and will disrupt the operation of the center. Dr. Benjamin's affidavit states, among other things, that requiring the physician performing the abortion to give all of the informed consent information to women will "disrupt my practice, raise the cost of abortions and burden women who seek to terminate a pregnancy."
Under Winfield the burden is on the state to demonstrate that this intrusion or restriction "serves a compelling state interest and accomplishes its goal through the use of the least intrusive means." 477 So.2d at 548. Considering the fact that the State does not even have a compelling interest in the health of a pregnant woman during the first trimester, or a fetus before it is viable, we agree with the trial court that there is a substantial likelihood that the appellees will prevail. Even in the second trimester, where the State does have a compelling interest, this restriction will still have to meet the "least intrusive" standard.[2]
The State, in its initial brief, relies on the wrong standard of review, arguing that the burden is on the one asserting unconstitutionality of a statute to demonstrate clearly that the statute is invalid.[3] The State is going to have to recognize, on remand, that it has the burden of demonstrating that legislation infringing on the right to privacy serves a compelling state interest and does so through the least intrusive means.
Nor are the abortion cases on which the State relies on point. For example, the State argues that a somewhat similar statute was held constitutional in Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), in which the Supreme Court concluded that it was not an undue burden to require "a doctor" to provide the information, where there was no evidence in the record that this would amount "in practical terms to a substantial obstacle to a woman seeking an abortion." Casey, 505 U.S. at 884, 112 S.Ct. at 2824. Casey is distinguishable for several reasons.
First, and most significant, the Florida Supreme Court applies strict scrutiny within the trimester framework of Roe v. Wade to test the constitutionality of laws which regulate a woman's right to terminate her pregnancy, which is a more stringent standard than that applied by the Court in Casey. In Casey, the Supreme Court receded from the Roe v. Wade trimester framework and the strict scrutiny standard. It held, instead, that abortion regulations are, under the federal constitution, subject to an analysis of whether they constitute an undue burden on the woman's right to terminate her pregnancy before viability. Id. at 878, 112 S.Ct. at 2821. In contrast to the United States Supreme Court, the Florida Supreme Court, as recently as 1996, has reiterated that regulations which infringe on the right to privacy are subject to strict scrutiny. Beagle v. Beagle, 678 So.2d 1271 (Fla.1996)(statute authorizing a court to impose grandparent visitation on an intact family is facially unconstitutional as violating a family's right to privacy).
In addition, in Casey there was no evidence in the record that requiring a physician to provide the informed consent information *1150 would be a "substantial obstacle." Casey, 505 U.S. at 884, 112 S.Ct at 2824. In this case there is evidence in the record that the regulation would make it more difficult for women to get abortions. The other abortion cases on which the State relies are distinguishable for the same reasons.[4]
We next address the new informed consent statute, section 390.0111(3)(a)1.a, which provides that consent is not voluntary or informed unless the information provided by the physician includes: "the nature and risks of undergoing or not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision of whether to terminate a pregnancy." The prior statute, section 390.001(4), Florida Statutes (Supp.1988) provided the following:
Consents required.Prior to terminating a pregnancy, the physician shall obtain the written informed consent of the pregnant woman, or in the case of a mental incompetent, the written consent of her court-appointed guardian.
The prior statute did not define informed consent, and accordingly physicians performing abortions could rely on section 766.103, the Florida Medical Consent Law, which essentially codifies the common law on informed consent. Parikh v. Cunningham, 493 So.2d 999 (Fla.1986). Section 766.103 provides, among other things, that consent is "in accordance with an accepted standard of medical practice among members of the medical profession with similar training and experience in the same or similar medical community." § 766.103(3)(a)1. It also requires that the physician give the patient information that a reasonable individual would want "under the circumstances ... recognized among other physicians ... in the same or similar community who perform similar treatments or procedures." § 766.103(3)(a)2.
The new abortion consent law contains neither of the above provisions which allow the physician to conform the information for "the circumstances" or the "accepted standard of medical practice" in the same or similar community. It thus appears that the statute standardizes the information being given to all women and removes the discretion accorded physicians in all circumstances other than abortion. That this was the legislature's intent is supported not only by the discretion specifically allowed physicians in the general informed consent law, section 766.103, but also in the specialized informed consent law for women with breast cancer, in which it is provided that the physician must "take into consideration the emotional state of the patient, the physical state of the patient, and the patient's ability to understand the information." § 458.324(2)(a)(3)(b), Fla. Stat.
This restriction, which does not allow a physician to tailor the information to the woman's circumstances, infringes on the woman's ability to receive her physician's opinion as to what is best for her, considering her circumstances. As our supreme court noted in In re T.W.:
The decision whether to obtain an abortion is fraught with specific physical, physiological, and economic implications of a uniquely personal nature for each woman.
551 So.2d at 1193. As with the first provision we addressed, the State has yet to persuade us how this restriction could be valid for women in their first trimester, when the State has no compelling interest in their health, or even in the second trimester, when there is a compelling interest.
Appellees also challenge this section of the statute, which limits informed consent to what "a reasonable patient would consider material," as unconstitutionally vague.
The test of vagueness of a statute is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.... The statute must give reasonable notice that a person's conduct is restricted by the statute. *1151 Newman v. Carson, 280 So.2d 426, 430 (Fla. 1973). If this statute is vague, it raises procedural due process issues, where, as here, if physicians violate the statute, their licenses to practice their profession are at stake. D'Alemberte v. Anderson, 349 So.2d 164 (Fla.1977).
Florida has a body of common law on informed consent which has essentially been codified in section 766.102, Florida Statutes (1995). Parikh, 493 So.2d at 999. There are also specialized informed consent statutes requiring more specific information, such as section 766.103 for women with breast cancer. By changing informed consent from what a reasonable physician would do under the circumstances, to what a reasonable patient would want to know, but without the traditional informed consent language "under the circumstances," arguably leaves the physicians with no standards to comport to. Is the so called "reasonable patient" a fourteen year old rape victim who is pregnant, or a mature woman who could have a variety of reasons for seeking an abortion? The standard of judicial review on this issue is not the same as it is on the issues involving the right of privacy, in which the burden is on the State to show a compelling need. Even so, we do think that the appellees have demonstrated a likelihood that they will prevail on the merits in showing that this provision is unconstitutionally vague.
The appellees have challenged the statute on other grounds, some of which were the basis of the temporary injunction. No inference should be drawn from the fact that we have not discussed the other issues. We have limited our discussion to two provisions of the statute which are sufficiently problematic to have persuaded us to leave the temporary injunction in place.
Affirmed.
GROSS, J., concurs.
SHAHOOD, J., dissents with opinion.
SHAHOOD, Judge, dissenting with opinion.
I would reverse. I have read and analyzed the majority opinion and cannot agree that appellees have demonstrated a likelihood that they will prevail on the merits because the statute in question is unconstitutionally vague.
NOTES
[1] Citing Public Health Trust v. Wons, 541 So.2d 96 (Fla.1989) (refusal of blood transfusion that is necessary to sustain life); Corbett v. D'Alessandro, 487 So.2d 368 (Fla. 2d DCA 1986) (removal of nasogastric feeding tube from adult in permanent vegetative state); In re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984) (removal of life support system from brain-dead infant); see also Satz v. Perlmutter, 379 So.2d 359 (Fla.1980) (removal of respirator from competent adult, decided prior to passage of privacy amendment under general right of privacy).
[2] One of the questions which concerns us is whether the statutory provision, which allows only the physician performing the abortion, or a referral physician, to give the woman the information she needs to make a decision, is the least intrusive means. The statute does not require the referral physician to be one who either knows or who has treated the patient. The statute allows a referral physician, who may be a pediatrician or an orthopedic surgeon, who may have no training or experience in the field, to provide the information, but prohibits a board certified obstetrician/gynecologist who works with the physician performing the abortion from doing so. We note that other statutes providing for informed consent in specific cases do not require the physician performing the procedure to "orally, in person" inform the patient. See, e.g., § 458.324, Fla. Stat. (breast cancer). Nor does the general informed consent statute. See § 766.103, Fla. Stat.
[3] See, e.g., Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974), in which the constitutionality of our no-fault insurance law was at issue.
[4] Fargo Women's Health Org. v. Schafer, 18 F.3d 526 (8th Cir.1994)(North Dakota statute facially constitutional, pursuant to Casey); Preterm Cleveland v. Voinovich, 89 Ohio App.3d 684, 627 N.E.2d 570 (10th Dist.1993)(Ohio constitutional provision guaranteeing right to liberty encompassed woman's choice as to whether to bear child, but was not broader than right conferred by due process clause of Fourteenth Amendment; statute constitutional pursuant to Casey); Barnes v. Moore, 970 F.2d 12 (5th Cir.1992)(Mississippi statute facially constitutional pursuant to Casey).