756 So.2d 218 (2000)
RENEE B.; Barbara S. Hunter; Tahara D. Wilson; Presidential Women's Center, Inc.; Florida Women's Medical Center, Inc., d/b/a Women's Clinic; Aware Woman Medical Center d/b/a Manhattan Magnolia Corporation, Aware Woman Health Center d/b/a Magnolia Management and Marketing Group, Inc.; Aware Woman Center For Choice, Inc.; Feminist Women's Health Center in Tallahassee, Inc.; Central Florida Women's Organization, Inc.; Randall Brooks Whitney, M.D.; Michael Benjamin, M.D.; Emergency Medical Assistance, Inc., Appellants,
v.
STATE of Florida, AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 1D99-1238.
District Court of Appeal of Florida, First District.
April 20, 2000.
*219 Bonnie Scott Jones and Jennifer Lemberg, Center for Reproductive Law & Policy, New York City; Larry Helm Spalding, ACLU Foundation of Florida, Tallahassee, for Appellants.
William H. Roberts, Deputy General Counsel, Agency for Health Care Administration, Tallahassee, for Appellee.
Elizabeth Cavendish, National Abortion and Reproductive Rights Action League, Washington, D.C.; James P. Joseph and Julie K. Stapel, Arnold & Porter, Washington, D.C., attorneys for Amici Curiae.
Thomas A. Horkan, Jr., Tallahassee; Paul Benjamin Linton, Northbrook, Illinois, attorneys on behalf of members of the Florida Legislature, Amici Curiae.
PER CURIAM.
This is an appeal from an order granting summary judgment in favor of the Agency for Health Care Administration ("AHCA"), determining as a matter of law that the challenged rules regarding Medicaid funding for medically necessary abortions do not violate the right to privacy guaranteed by Article I, section 23, of the Florida Constitution, or the equal protection of the laws guaranteed by Article I, section 2 of the Florida Constitution. We affirm.
The rules at issue exclude medically necessary abortions from Medicaid coverage, *220 except in cases where the pregnancy endangers the life of the mother, or is the result of rape or incest.[1]
Appellants, plaintiffs below, filed a complaint in the Fifteenth Judicial Circuit challenging these rules. Appellants sought a declaration that the rules were unconstitutional; a permanent injunction prohibiting enforcement of the regulations; and reimbursement to the Medicaid-eligible plaintiffs and providers for medically necessary abortions performed during the pendency of this suit. The circuit court for Palm Beach County certified the following plaintiff class:
all women in the state of Florida who (1) are, have been, or will be during the pendency of the litigation pregnant and Medicaid eligible; (2) have decided or will decide, in consultation with their physicians, to have abortions; (3) are, have been, or will be denied Medicaid coverage for abortions and related procedures.
Subsequently, the case was transferred to the Second Judicial Circuit for Leon County. Both appellants and AHCA filed motions for summary judgment. The parties agreed that the issues to be resolved were legal, and that there were no disputed issues of fact. The circuit court denied appellants' motion, and granted AHCA's motion, ruling that the challenged rules did not violate the right to privacy, because they did not impinge on the fundamental right to choose. The court, therefore, did not reach the question whether the rules serve a compelling state interest. The court further ruled that the rules did not violate the guarantee of equal protection of the laws, relying on federal cases to that effect.
Appellants contend that while they do not assert a right to public assistance or government-funded health care, nor do they assert a right to abortion on demand, nevertheless, when the state has chosen to fund medically necessary health care for its citizens, the Florida Constitution requires it to do so in a manner neutral with respect to the exercise of fundamental rights. Appellants argue the state's regulatory scheme is not neutral with respect to reproductive choice, but rather coerces a woman's exercise of her fundamental right to privacy and creates an unconstitutional classification for the receipt of government benefits.
*221 As to the right of privacy, appellants contend that by funding the costs of prenatal care and childbirth, but not medically necessary abortions, the state coerces the exercise of fundamental rights and violates bodily integrity without serving a compelling state interest.[2] As to the guarantee of equal protection of the laws, appellants argue the rules impinge on a fundamental right without serving a compelling state interest; perpetuate outmoded stereotypes of women as childbearers, and discriminate on the basis of sex, because virtually all medically necessary health care is provided for Medicaid-eligible men; and create an irrational and oppressive distinction between life-saving and health-preserving abortions.
In its order, the circuit court ruled as follows:
In Harris v. McRae, 448 U.S. 297 (1980), the Supreme Court noted that the Medicaid program was a system of "cooperative federalism" and that while there is no obligation on the part of the state to pay for a service which Congress has chosen not to fund, it added, in a footnote, that "[a] participating state is free, if it chooses, to include in its Medicaid Plan those medically necessary abortions for which federal reimbursement is unavailable ... [w]e hold only that a state need not include such abortions in its Medicaid plan." Id. at 311, footnote 16. It appears that our State, via section 409.902, Florida Statutes, has elected to fund only those services included in the program.
. . .
The Plaintiffs' argument on equal protection and due process grounds is very compelling from a public policy standpoint, and from the perspective of basic fairness. If one acknowledges that a decision concerning reproduction is a fundamental right, and both the federal and state constitutional law says that it is, then our state's decision on Medicaid funding says, in effect, that if you are poor this fundamental right will be much more difficult to exercise.
The federal courts, however, have specifically addressed this argument and ruled contrary to the Plaintiff's position. See Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), Harris v. McRae, supra. The courts have held, in essence, that indigency is not a suspect classification and discrimination against poor people is not barred by those federal constitutional provisions. There is no Florida case law on point and, since our state constitutional provisions are essentially the same as their federal counterparts, there is no justifiable basis *222 on which to reach a result contrary to that in the federal decisions.
There is also no support for Plaintiffs' position in the federal case law relative to the privacy protection. That does not end the inquiry, however, because Florida has a specific constitutional right of privacy in Article I, Section 23....
The Florida Supreme Court has held that this state constitutional provision is more expansive in nature than the protection offered under the United States Constitution. Thus, in In re T.W., 551 So.2d 1186 (Fla.1989), although the United States Constitution upheld a federal statute which required a minor to obtain parental consent prior to receiving an abortion, the Florida Supreme Court struck down a similar statute noting that "the amendment embraces more privacy interests, and extends more protection to the individual in those interests, than does the federal constitution." Id. at 1192. The Court stated that: "Florida's privacy provision is clearly implicated in a woman's decision of whether or not to continue her pregnancy .... [there are] few more personal or private decisions concerning one's body that one can make in the course of a lifetime."
Similarly, in State v. Presidential Women's Center, 707 So.2d 1145 (Fla. 4th DCA 1998), the Court upheld a non-final order temporarily enjoining enforcement of the "Women's Right to Know Act," Section 390.0111, Florida Statutes, which required that a physician performing an abortion inform the patient of what a "reasonable patient would consider material." Id. at 1147. The Court held that the standard of review for this constitutional provision is the "compelling state interest" standard. In other words, the state must show that a challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means. The court concluded in the case that the health of a pregnant woman did not become a "compelling state interest" until after the end of the first trimester of pregnancy.
The problem for the Plaintiffs here, however, is that we never reach a "compelling state interest" analysis because there is no impingement on the right to choose. There is a big difference between a government making a decision not to fund the exercise of a constitutional right and doing something affirmatively to prohibit, restrict, or interfere with it. In both T.W. and Presidential Women's Center, the government affirmatively imposed some barrier or obstacle between a woman and her physician in terms of making a decision as to whether to have an abortion.
Obviously, the decision by government to not do something can have a negative effect on a person's ability to fully exercise a constitutional right. It is difficult to see, however, how such a decision would be violative of the privacy provision of the Florida Constitution, the heart of which is the right to be let alone and free from government intrusion into private affairs.
We find no error in the circuit court's ruling. With regard to the right of privacy argument, we note particularly, and concur with the argument presented in the amicus brief in support of appellee submitted by some members of the Florida Legislature, that "the existence of a constitutional right to engage in certain conduct does not carry with it an entitlement to sufficient state funds to enable one to exercise that right." We further agree with appellee that the policy decision to fund prenatal care and childbirth expenses, but not abortion, does not coerce indigent women to carry a pregnancy to term, nor does it penalize them if they choose to have an abortion; to the extent the Medicaid restriction influences the decision whether to have an abortion, such influence is not unconstitutional.
Because we consider this a case with far reaching implications for the citizens of the *223 state, we certify the following question of great public importance:
DOES THE EXCEPTION FROM MEDICAID COVERAGE FOR MEDICALLY NECESSARY ABORTIONS VIOLATE THE EXPRESS RIGHT OF PRIVACY FOUND IN ARTICLE I, SECTION 23 OF THE FLORIDA CONSTITUTION?
AFFIRMED.
JOANOS, MINER and DAVIS, JJ., CONCUR.
NOTES
[1] 59G-4.150(4)(a)12.:

Inpatient hospital care for induced abortions and related procedures shall be reimbursed only to save the life of the mother or, when the pregnancy is the result of rape (as defined in Section 794.011, F.S. (1993)) or incest (as defined in Section 826.04, F.S., (1993)). The attending physician must complete the abortion certification form, as found in the Medicaid Reimbursement Handbook. UB-92. This form must be attached to the hospital claim submitted for reimbursement.
(b) Procedures and services excluded from reimbursement within the Inpatient Hospital Services Program....
. . .
9. Induced abortions and related procedures except as provided in subparagraph (4)(a)11. [sic]
59G-4.160 Outpatient Hospital Services.
(4) Reimbursable Outpatient Hospital Services.
(a) Outpatient hospital services are reimbursable within certain limitations.
. . .
5. Outpatient hospital care for induced abortions and related procedures shall be reimbursed only if the requirements in section 59G-4.150(4)(a)10. F.A.C., have been met.
. . .
(b) Procedures and services excluded from reimbursement:
. . .
3. Induced abortions and related procedures except as provided in section 594.150, Inpatient Hospital Services, F.A.C. 59G-4.230(2):
All physician services providers enrolled in the Medicaid program must be in compliance with the Florida Medicaid Physician Coverage and Limitations Handbook, January 1998, which is incorporated by reference, and the Florida Medicaid Provider Reimbursement Handbook, HCFA 1500 and EPSDT 221, which is incorporated in 59G-5.020.
[2] In support of their argument, appellants cite a number of out-of-state case authorities, including the following: Planned Parenthood v. Perdue, No. 3AN 98-7004 CI, slip op. (Alaska Super.Ct., March 16, 1999); Committee to Defend Reproductive Rights v. Myers, 625 P.2d 779 (Cal.1981); Doe v. Maher, 40 Conn.Supp. 394, 515 A.2d 134 (Super.Ct.1986); Roe v. Harris, No. 96977, slip op. (Idaho Dist. Ct., Feb 1, 1994); Doe v. Wright, No. 91 Ch.1958, slip op. (Ill.Cir.Ct., Dec. 2, 1994); leave to file late appeal denied, No. 78512 (Ill. Feb. 28, 1995); Moe v. Secretary of Admin. & Fin., 382 Mass. 629, 417 N.E.2d 387 (1981); Women of Minnesota v. Gomez, 542 N.W.2d 17 (Minn.1995); Jeannette R. v. Ellery, No. BD94-811, slip op. (Mont.Dist.Ct., May 22, 1995); Right to Choose v. Byrne, 91 N.J. 287, 450 A.2d 925 (1982); New Mexico Right to Choose/NARAL v. Johnson, 126 N.M. 788, 975 P.2d 841 1998 N.M. Lexis 466 (1998); Planned Parenthood Ass'n. v. Department of Human Resources, 63 Or.App. 41, 663 P.2d 1247 (Ct.App.1983), aff'd. on other grounds, 297 Or. 562, 687 P.2d 785 (1984); Doe v. Celani, No. S81-84CnC, slip op. (Vt.Super.Ct., May 26, 1986); Women's Health Center of West Virginia, Inc. v. Panepinto, 191 W.Va. 436, 446 S.E.2d 658 (1993).

In addition, appellants provided the court with the following contrary authorities: Doe v. Childers, No. 94CI02183, slip op. (Ky.Cir. Ct., Aug. 3, 1995); Doe v. Department of Social Servs., 439 Mich. 650, 487 N.W.2d 166 (1992); Rosie J. v. North Carolina Dep't of Human Resources, 347 N.C. 247, 491 S.E.2d 535 (1997); Fischer v. Dep't of Public Welfare, 509 Pa. 293, 502 A.2d 114 (1985); Low-Income Women of Texas v. Raiford, No. 93-02823, slip op. (Tx.Dist.Ct., March 23, 1998), appeal docketed, No.XX-XX-XXXXX CV (Tex. Ct.App., Feb. 10, 1999).