790 So.2d 1036 (2001)
RENEE B., et al., Petitioners,
v.
FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, Respondent.
No. SC00-989.
Supreme Court of Florida.
July 12, 2001.
Larry Helm Spalding, ACLU Foundation of Florida, Tallahassee, FL, and Bonnie Scott Jones, Center for Reproductive Law & Policy, New York, NY, for Petitioners.
William H. Roberts, Deputy General Counsel, Agency For Health Care Administration, Tallahassee, FL, for Respondent.
Elizabeth Cavendish, National Abortion and Reproductive Rights Action League, and James P. Joseph and Julie K. Stapel of Arnold & Porter, Washington, DC, for the National Abortion and Reproductive Rights Action League, Inc., Amici Curiae.
*1037 Thomas A. Horkan, Jr., Tallahassee, FL, and Paul Benjamin Linton, Northbrook, IL, for Members of the Florida Legislature, Amici Curiae.
HARDING, J.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
DOES THE EXCEPTION FROM MEDICAID COVERAGE FOR MEDICALLY NECESSARY ABORTIONS VIOLATE THE EXPRESS RIGHT OF PRIVACY FOUND IN ARTICLE I, SECTION 23 OF THE FLORIDA CONSTITUTION?
Renee B. v. State Agency for Health Care Administration, 756 So.2d 218, 223 (Fla. 1st DCA 2000). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the negative.
This case involves a class action suit filed in March of 1993 on behalf of:
all women in the state of Florida who (1) are, have been, or will be during the pendency of the litigation pregnant and Medicaid eligible; (2) have decided or will decide, in consultation with their physicians, to have abortions; (3) are, have been, or will be denied Medicaid coverage for abortions and related procedures.
The plaintiffs are three Medicaid-eligible women, seven reproductive health clinics that provide abortions, two physicians, and a nonprofit organization that provides financial aid to women who cannot afford abortions. The petitioners sought declaratory relief based on challenges to three rules of the Agency for Health Care Administration (AHCA): rules 59G-4.150(4)(a)(12),[1] 59G-4.160(4)(a)(5)(b)3,[2] and 59G-4.230(2),[3] Fla. Admin. Code (1999.) The rules exclude medically necessary abortions from Medicaid coverage, except *1038 in cases where the pregnancy endangers the life of the mother or is the result of rape or incest. The petitioners argue that the rules[4] violate the privacy clause of the Florida Constitution.
The petitioners in this case consist of women who allegedly need medically necessary abortions but were denied funding under the current scheme. Barbara Hunter has Grave's Disease which requires radio-iodine treatment. This treatment, however, would harm the fetus, so Hunter had to stop treatment during the duration of her pregnancy. Renee B.'s pregnancy caused her to hemorrhage and have high blood sugar. Diabetes runs in her family. She was advised to confine herself to home, keep off her feet, and change her diet. In addition to these two examples, the petitioners cite to a number of other causes of potential medically necessary abortions which are not covered: HIV, AIDS, diabetes, lupus, renal disease, sickle cell anemia, congenital heart disease, or fetal anomalies. All of the named petitioners in this case ultimately received abortions with non-state funds.
The petitioners originally filed their complaint in the Fifteenth Circuit Court of Palm Beach County in 1993. The petitioners sought a declaration that the regulations were unconstitutional, a permanent injunction prohibiting enforcement of the regulations, and reimbursement to the Medicaid-eligible women and providers for medically necessary abortions performed during the pendency of this suit. The trial court certified the class in 1994 and transferred the case to the Second Circuit Court in Leon County in 1995. Both the petitioners and AHCA filed motions for summary judgment. In 1998, the trial court denied the petitioners' motion and granted AHCA's motion, ruling that the challenged rules did not violate the privacy or equal protection clauses. After receiving the case on appeal, the First District Court of Appeal certified the case as one of great public importance requiring immediate resolution by this Court. However, this Court declined jurisdiction and remanded the case back to the district court. On remand, the First District Court of Appeal affirmed the trial court's order and certified the question above.
We begin our analysis by looking at the framework of the Medicaid program in this country and in Florida. In 1965, Congress established the federal Medicaid program when it enacted Title XIX of the Social Security Act. See 42 U.S.C.A. § 1396. Medicaid is a joint federal-state program designed to provide medical care to the poor. Although states develop individual plans for implementing Medicaid, the federal government requires that states provide certain mandatory categories of services and permits the states to provide additional optional services. After states have paid for medical services, the federal government reimburses the states for a portion of those costs.
In 1976, Congress passed the Hyde Amendment, which restricts the availability of federal funds for abortions. See Pub.L. No. 94-439, § 209, 90 Stat. 1434 (1976). Although there have been several variations, some initial versions of the Hyde Amendment only permitted federal funds to be used for abortions if the procedure was necessary to save a woman's life. *1039 However, a subsequent version of the Hyde Amendment expanded federal funding to include abortions for victims of rape and incest. See Pub.L. No. 103-112, § 509, 107 Stat. 1082-1113 (1993). In Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671 (1980), the United States Supreme Court concluded that the Hyde Amendment did not violate either the Equal Protection Clause or the right of privacy found in the Due Process Clause of the federal constitution.
The Medicaid program in Florida is administered by AHCA. See § 409.902, Fla. Stat. (2000). Section 409.902 provides that state Medicaid payments "shall be made, subject to any limitations or directions provided for in the General Appropriations Act, only for services included in the program, shall be made only on behalf of eligible individuals, and shall be made only to qualified providers in accordance with federal requirements for Title XIX of the Social Security Act and the provisions of state law." Sections 409.905 and 409.906 only permit payments for services which are either required or optional under the federal program. Pursuant to the Hyde Amendment, the abortions sought by the petitioners in this case are neither required nor optional under the federal program. Section 409.908 gives AHCA the authority to establish rules for reimbursement in accordance with state and federal law.
In Harris v. McRae, the Supreme Court pointed out that the Hyde Amendment does not place a limit on state funds and therefore states can choose to fund other procedures, including abortions, beyond those procedures that are funded by the Hyde Amendment. See 448 U.S. at 310 n. 16, 100 S.Ct. 2671. Hence, the focus of the present case is whether AHCA's rules violate the Florida Constitution.
The petitioners argue that Medicaid generally provides reimbursement for all medical services that are rendered to eligible individuals and medically necessary. They assert that for no other service does Florida require that a patient's condition be life-threatening or caused by a crime. In contrast, AHCA argues that Medicaid does not pay for all medically necessary procedures. AHCA points to certain organ transplants as examples.
In Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544 (Fla.1985), this Court stated the following regarding Florida's right of privacy:
The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, free-standing constitutional provision which declares the fundamental right to privacy. Article I, section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.
Id. at 548. We proceeded to state that the right of privacy is a fundamental right which demands the compelling state interest standard of scrutiny. That test shifts the burden of proof to the State to justify an intrusion on privacy, a burden which can only be met by "demonstrating that the challenged regulation serves a compelling state interest and accomplishes its *1040 goal through the use of the least intrusive means." Id. at 547.
The strict scrutiny standard, however, would only be necessary in the instant case if it is first determined that the challenged rules violate the petitioners' right of privacy. In the order below, the trial court found no violation:
There is a big difference between a government making a decision not to fund the exercise of a constitutional right and doing something affirmatively to prohibit, restrict, or interfere with it. In both [In re] T.W.[, 551 So.2d 1186, 1192 (Fla. 1989),] and [State v.] Presidential Women's Center, [707 So.2d 1145 (Fla. 4th DCA 1998),] the government affirmatively imposed some barrier or obstacle between a woman and her physician in terms of making a decision as to whether to have an abortion.
Obviously, the decision by government to not do something can have a negative effect on a person's ability to fully exercise a constitutional right. It is difficult to see, however, how such a decision could be violative of the privacy provision of the Florida Constitution, the heart of which is the right to be let alone and free from government intrusion into private affairs. The plaintiffs' argument, in effect, says to the government: leave me alone, stay out of my private affairs, and let me chose [sic] what it is I want to do concerning reproduction, except that I want you to finance my choice. This the constitution does not require.
Renee B. v. State Agency for Health Care Admin., No. 97-3983, Order at 5 (Fla.2d Cir.Ct. Oct. 9, 1998). We agree with the reasoning of the trial court. We are also persuaded by the following language from the Supreme Court's opinion in McRae:
As the Court [in Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977)] elaborated:
"The Connecticut regulation before us is different in kind from the laws invalidated in our previous abortion decisions. The Connecticut regulation places no obstaclesabsolute or otherwise in the pregnant woman's path to an abortion. An indigent woman who desires an abortion suffers no disadvantage as a consequence of Connecticut's decision to fund childbirth; she continues as before to be dependent on private sources for the service she desires. The State may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there. The indigency that may make it difficult and in some cases, perhaps, impossible for some women to have abortions is neither created nor in any way affected by the Connecticut regulation." Ibid.

... Constitutional concerns are greatest when the State attempts to impose its will by force of law; the State's power to encourage actions deemed to be in the public interest is necessarily far broader.
. . . .
... [I]t simply does not follow that a woman's freedom of choice carries with it a constitutional entitlement to the financial resources to avail herself of the full range of protected choices. The reason why was explained in Maher: although government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation. Indigency falls in the latter category. The financial constraints that restrict an indigent woman's ability to enjoy the full range of constitutionally protected freedom of choice are the product not of *1041 governmental restrictions on access to abortions, but rather of her indigency. Although Congress has opted to subsidize medically necessary services generally, but not certain medically necessary abortions, the fact remains that the Hyde Amendment leaves an indigent woman with at least the same range of choice in deciding whether to obtain a medically necessary abortion as she would have had if Congress had chosen to subsidize no health care costs at all.
448 U.S. at 314-17, 100 S.Ct. 2671 (quoting Maher v. Roe, 432 U.S. 464, 474, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977)). See also Doe v. Dep't. of Social Servs., 439 Mich. 650, 487 N.W.2d 166 (1992); Rosie J. v. North Carolina Dep't of Human Resources, 347 N.C. 247, 491 S.E.2d 535 (1997); Fischer v. Dep't of Public Welfare, 509 Pa. 293, 502 A.2d 114 (1985). Although the Florida Legislature has opted to subsidize medically necessary services generally, but not certain medically necessary abortions, the fact remains that Florida's Medicaid program leaves an indigent woman with at least the same range of choice in deciding whether to obtain a medically necessary abortion as she would have had if the Legislature had chosen to subsidize no health care costs at all. The right of privacy in the Florida Constitution protects a woman's right to choose an abortion. But contrary to the petitioners' arguments, the right of privacy does not create an entitlement to the financial resources to avail herself of this choice. Poverty may make it difficult for some women to obtain abortions. Nevertheless, the State has imposed no restriction on access to abortions that was not already present. Therefore, we find that the rules in question do not violate the right of privacy in the Florida Constitution. We answer the certified question in the negative.
We are aware that the petitioners have also raised an equal protection challenge to AHCA's rules. The petitioners claim that AHCA's rules discriminate on the basis of gender. They assert that Florida's Medicaid program provides a full range of health services, including reproductive services, to eligible men, as long as the services are medically necessary. In contrast, the petitioners argue that Florida's Medicaid program denies women medically necessary abortions unless their pregnancy is life-threatening or the result of rape or incest.
The petitioners raised their gender discrimination claim in their original 1993 complaint. The trial court's order, which was rendered on October 9, 1998, did not address this claim. Nevertheless, in November of 1998, the citizens of Florida approved the following amendment to article I, section 2 of the Florida Constitution:
Basic rights.All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion, national origin, or physical disability.
The petitioners assert in their briefs filed in this Court that the amendment to article I, section II requires claims of gender discrimination to be examined with strict scrutiny. Due to the inadequate record in this case and the fact that neither the trial court nor the district court[5] ruled on this issue, we decline to address the petitioners' equal protection claim. Our decision *1042 today does not foreclose this claim being raised in an appropriate tribunal in the future.
Accordingly, for the reasons stated in this opinion, we answer the certified question in the negative and approve the decision of the district court of appeal.
It is so ordered.
WELLS, C.J., and ANSTEAD, LEWIS, and QUINCE, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion.
PARIENTE, J., recused.
SHAW, J., concurring in part and dissenting in part.
I concur in the majority's rejection of the petitioners' privacy claim; however, I dissent from the majority's decision to forego treatment of the petitioners' equal protection claim based on gender discrimination.
Although the amendment to article I, section 2, succeeded the petitioners' original complaint, the petitioners pressed their gender discrimination claim in the trial court. Moreover, the gender discrimination claim was fully briefed before the First District and this Court. While both the trial court and the First District neglected to address this facet of the petitioners' equal protection claim, this Court clearly has the authority to address the issue. See, e.g., Fulton County Adm'r. v. Sullivan, 753 So.2d 549, 553 n. 3 (Fla.1999) ("Given our jurisdiction on the basis of the certified question, we have jurisdiction over all of the issues raised in this case.").
As to the question of whether this Court should exercise its discretion, the majority indicates that the record is not ripe for this Court's review of the gender discrimination claim. However, the majority does not suggest what pertinent information is missing from the record and I am unable to ascertain what further information could be garnered from renewed or additional litigation on an issue that in my opinion demands resolution and will undoubtedly wind its way back to this Court. In sum, the majority's act of judicial restraint appears to be without justification. As Justice Drew duly observed in Zirin v. Charles Pfizer & Co., 128 So.2d 594, 596 (Fla.1961), this Court should be resolute in avoiding needless litigation:
Needless steps in litigation should be avoided wherever possible and courts should always bear in mind the almost universal command of constitutions that justice should be administered without "sale, denial or delay." Piecemeal determination of a cause by our appellate court should be avoided and when a case is properly lodged here there is no reason why it should not then be terminated here.
I believe the majority's restraint, rather than effecting a more complete presentation of this issue in the future, will only result in a fruitless delay. Accordingly, I dissent.
NOTES
[1] Rule 59G-4.150(4)(a)12 provided:

Inpatient hospital care for induced abortions and related procedures shall be reimbursed only to save the life of the mother or, when the pregnancy is the result of rape (as defined in Section 794.011, F.S. (1993)) or incest (as defined in Section 826.04, F.S., (1993)). The attending physician must complete the abortion certification form, as found in the Medicaid Reimbursement Handbook. UB 92. This form must be attached to the hospital claim submitted for reimbursement.
(b) Procedures and services excluded from reimbursement within the Inpatient Hospital Services Program....
. . . .
9. Induced abortions and related procedures except as provided in subparagraph (4)(a)11. [sic]
[2] Rule 59G-4.160, entitled "Outpatient Hospital Services," provided:

(4) Reimbursable Outpatient Hospital Services.
(a) Outpatient hospital services are reimbursable within certain limitations.
. . . .
5. Outpatient hospital care for induced abortions and related procedures shall be reimbursed only if the requirements in section 59G-4.150(4)(a)10. F.A.C., have been met.
. . . .
(b) Procedures and services excluded from reimbursement:
. . . .
3. Induced abortions and related procedures except as provided in section 59G-4.150, Inpatient Hospital Services, F.A.C.
[3] 59G-4.230(2) provided:

All physician services providers enrolled in the Medicaid program must be in compliance with the Florida Medicaid Physician Coverage and Limitations Handbook, January 1998, which is incorporated by reference, and the Florida Medicaid Provider Reimbursement Handbook, HCFA 1500 and EPSDT 221, which is incorporated in 59G-5.020.
[4] At the beginning of this year, the rules at issue in this case were amended. The rules no longer contain language regarding which abortions are covered by Medicaid. Rather, the amended rules simply incorporate by reference the Florida Medicaid Provider Reimbursement Handbook and the Florida Medicaid Hospital Coverage and Limitations Handbook. The Handbooks contain the same restrictions as the previous version of the rules.
[5] The district court's opinion was issued on April 20, 2000 (after the 1998 amendment to article I, section 2).