884 So.2d 526 (2004)
STATE of Florida, Attorney General, Charles J. Crist, Jr., in his official capacity, Florida Department of Health, John Agwunobi, M.D., Secretary, in his official capacity, and Florida Board of Medicine, Appellants,
v.
PRESIDENTIAL WOMEN'S CENTER, Michael Benjamin, M.D., North Florida Women's Health and Counseling Services, Inc., et al., Appellees.
No. 4D02-4485.
District Court of Appeal of Florida, Fourth District.
October 13, 2004.
*529 Charles J. Crist, Jr., Attorney General, James Peters, Special Counsel, and John Rimes, Senior Assistant Attorney General, Tallahassee, for appellants.
William W. Large, Tallahassee, for appellants Department of Health and Secretary John Agwunobi.
Matthew D. Staver, Erik W. Stanley and Anita L. Staver of Liberty Counsel, Longwood, and Teresa Stanton Collett, Minneapolis, MN, for Amicus Curiae Christian Medical Association and Catholic Medical Association.
Barry M. Silver, Boca Raton, for appellee North Florida Women's Health & Counseling Services, Inc.
Marshall J. Osofsky of Moyle, Flanigan, Katz, Raymond and Sheehan, P.A., West Palm Beach, and Bebe J. Anderson, New York, NY, for appellees Presidential Women's Center and Michael J. Benjamin, M.D.
Donna Lee of Planned Parenthood Federation of America, New York, NY, for Amicus Curiae Florida Association of Planned Parenthood Affiliates, Planned Parenthood of Northeast Florida, Inc., Planned Parenthood of Southwest and Central Florida, Inc., Planned Parenthood of South Palm Beach & Broward Counties, Inc., Planned Parenthood of North Central Florida, Inc., Planned Parenthood of the Palm Beach and Treasure Coast Area, Inc., Planned Parenthood of Greater Orlando, Inc., American Civil Liberties Union of Florida and American Civil Liberties Union Reproductive Freedom Project.
STEVENSON, J.
We have for review the trial court's order granting summary judgment in favor of Appellees, Presidential Women's Center, Michael Benjamin, M.D., and North Florida Women's Health and Counseling Services, Inc. (collectively Presidential Women's Center), and finding unconstitutional Florida's abortion informed-consent statute, also known as the "Women's Right to Know Act" (the Act). See § 390.0111, Fla. Stat. (1997); Ch. 97-151, § 1, Laws of Fla. (CS/HB 1205). We affirm.
The Act prohibits the termination of all pregnancies except where the physician performing the procedure or the referring physician, at a minimum, orally and in-person informs the woman of certain statutorily mandated information and obtains her written consent.[1] We first reviewed a challenge to the Act when the trial court *530 granted Presidential Women's Center's amended emergency motion for temporary injunction, enjoining appellant, the State of Florida (State), from enforcing the Act. We affirmed the trial court's order granting the temporary injunction because we found two provisions of the Act, in particular, to be "sufficiently problematic ... to leave the temporary injunction in place." State v. Presidential Women's Ctr., 707 So.2d 1145, 1151 (Fla. 4th DCA 1998)(Presidential Women's Center I).
On remand, both Presidential Women's Center and the State filed motions for summary judgment. The trial court granted Presidential Women's Center's motion for summary judgment, finding that the Act violates Florida's constitutionally protected right to privacy because it impermissibly intrudes upon the woman's right to choose at every stage of her pregnancy without furthering a compelling State interest. The trial court also found the statute to be unconstitutionally vague because it required the physician performing the abortion to satisfy a unique and confusing "reasonable patient" standard. Additionally, the trial court concluded that the issue was ripe for summary judgment since the Act was unconstitutional on its face.
We first address the State's argument that summary judgment was improper because a factual record could be developed to demonstrate that the Act will not result in an increased cost to the woman, will cause no intrusion on the physician's practice and allows the physician discretion. We acknowledge that the constitutionality of a statute can present a mixed question of fact and law depending upon the nature of the statute involved and the scope of its threatened operation. See Glendale Fed. Sav. & Loan Ass'n v. State, Dep't of Ins., 485 So.2d 1321, 1324-25 (Fla. 1st DCA 1986). Further, the requirement that a woman give what is truly a voluntary and informed consent to a medical procedure, as a general proposition, is also proper and not unconstitutional. See In re T.W., 551 So.2d 1186, 1197 (Fla.1989). However, we find, as the trial court did, that even if the State could develop factual evidence in support of each of its positions, as a matter of law, the Act is unconstitutional because, on its face, it imposes significant obstacles and burdens upon the pregnant woman which improperly intrude upon the exercise of her choice between abortion and childbirth.
The substantive law on abortion in Florida does not mirror that of the federal law. In T.W., the Florida Supreme Court noted that, unlike the federal Constitution, "Florida is unusual in that it is one of at least four states having its own express constitutional provision guaranteeing an independent right to privacy." Id. at 1190. As a result, the Florida Supreme Court has, on more than one occasion, stated that the Florida Constitution "embraces more privacy interests, and extends more protection to the individual in those interests, than does the federal Constitution." Id. at 1191-92 (citing Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation, 477 So.2d 544, 548 (Fla.1985)).
Florida courts apply the highly stringent "strict scrutiny" standard in determining whether a legislative enactment *531 impermissibly infringes on the right to privacy:
"Since the privacy section as adopted contains no textual standard of review, it is important for us to identify an explicit standard to be applied in order to give proper force and effect to the amendment. The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy. The burden can be met by demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means."
T.W., 551 So.2d at 1192 (quoting Winfield, 477 So.2d at 547).
Florida courts have further found that Florida's privacy provision is implicated in a woman's decision of whether or not to continue her pregnancy. See id. at 1192. See also Renee B. v. Fla. Agency for Health Care Admin., 790 So.2d 1036, 1041 (Fla.2001)(stating "[t]he right of privacy in the Florida Constitution protects a woman's right to choose an abortion"). In this respect, the Florida Supreme Court recently reaffirmed that the trimester framework announced in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), rather than the "undue burden" standard delineated in Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), is the law to be applied in Florida in determining whether the State's regulation impermissibly infringes on the woman's right to choose. See N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 634 (Fla.2003)("NFWHCS") (declining the State's invitation to abandon the strict scrutiny standard in favor of the less stringent undue burden standard announced in Casey).
Under the Roe trimester framework, during the first trimester, the abortion decision and its effectuation must be left to the woman and cannot be significantly restricted by the State. See T.W., 551 So.2d at 1193-94. During the second trimester, the State, in promoting its interest in the health of the mother, may regulate the abortion procedure in ways that are reasonably related to the mother's maternal health. See id. The State's interest becomes compelling during the last trimester, or beginning roughly at the point of viability, because the State has an interest in promoting the potentiality of human life. See id. In addition to meeting its heavy burden of demonstrating that its interests are compelling, the State must present proof that the compelling interests are in fact furthered by the statutory intrusion into the protected fundamental rights, and that the statutory intrusion is the least intrusive means to achieve that goal. See id.
The Florida Supreme Court declared the statutes regulating abortion in T.W. and NFWHCS unconstitutional because they implicated a woman's right to choose without furthering a compelling state interest. T.W. involved a challenge to an Act that required a pregnant minor to obtain the consent of her parent prior to an abortion. The court found the Act to be unconstitutional because it intruded upon the pregnant minor's privacy from conception to birth. Additionally, the court found that the State could have no special interests in protecting the pregnant minor where an abortion is concerned, in light of the wide latitude it otherwise grants to unwed minors to make life-or-death decisions concerning themselves or existing children without parental consent *532 no matter how dire the possible consequences. See 551 So.2d at 1195.
The supreme court reached a similar conclusion in NFWHCS, which involved a challenge to the Parental Notice of Abortion Act, requiring a pregnant minor to notify a parent of her decision to undergo an abortion or, alternatively, convince a court that she is sufficiently mature to make the decision herself. The court noted that nothing whatsoever had changed in the statutory scheme since T.W., as Florida law continued to allow an unwed pregnant minor to consent to more dangerous pregnancy-related medical procedures for herself and her child without parental consent. Adopting the trial court's findings, the court outright rejected the State's argument that an abortion procedure is different. The court noted that the risks to a pregnant minor who carries a child to term are potentially greater than the risk of having an abortion, and there is nothing to suggest that a minor is any more mature about making other pregnancy-related medical decisions, i.e., determining medical treatment for the child or giving the child up for adoption. Yet, the state does not require parental notice in any of those situations. See 866 So.2d at 634.
Returning to the instant case, the statute at issue runs afoul of Florida law in several ways. We adopt the findings set forth in the trial court's final order since they are correct and aptly state the law in this area. The final order granting summary judgment provides in part:
10. By interfering with the right of a woman seeking an abortion "to be alone and free from governmental intrusion into [her] private life", the Amended Statute clearly implicates the right to privacy, Fla. Const., art. I, § 23. By not allowing a physician to tailor the [provided] information to the woman's circumstances, [the Act] infringes on the woman's ability to receive her physician's opinion as to what is best for her, considering her circumstances. State v. Presidential Women's Ctr., 707 So.2d 1145, 1150 (Fla. 4th DCA 1998), as corrected by 709 So.2d 623, (Fla. 4th DCA 1998);
. . . .
15. The Legislature has made no distinction in the Amended Statute between first or second trimester, nor has it made any distinction between viability and pre-viability. This is significant in considering the issue of the Amended Statute's constitutionality.
The State's interest in safeguarding a woman's health becomes compelling only after the first trimester of pregnancy. However, the subject Amended Statute is not limited to any stage of pregnancy, but rather intrudes upon a woman's right to obtain abortion at any stage, be it during the first, second or third trimester. The Amended Statute does not further a compelling state interest. Therefore, the Amended Statute violates Florida's constitutional protected right of privacy;
16. The language of the Amended Statute restricts the categories of physicians authorized to provide informed consent information to an abortion patient and infringes on a woman's ability to receive her physician's opinion as to what is best for her considering her particular circumstances. This is constitutionally impermissible. Presidential Women's Center, 707 So.2d at 1149-1150.
17. The Amended Statute requires inter alia that:
1. The physician who is to perform the procedure, or the referring physician, has, at a minimum, orally, in person, informed the woman of: (a) the nature and risk of undergoing or *533 not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision of whether to terminate a pregnancy.
By imposing the restriction that informed consent is obtained only if the physician performing the abortion or referring physician orally informs the woman, the State is not employing the least intrusive means of serving an interest in a woman's health. The Amended Statute allows a referring physician, who may be a pediatrician or an orthopedic surgeon, and who may have no training or experience in the field, to provide the information, but prohibits a board certified obstetrician/gynecologist who works with the physician performing the abortion from informing the woman of this important information. The language of the Amended Statute restricts the categories of physicians allowed to give the required information;
18. The Amended Statute requires that the physician must orally and in person inform the woman of:
a. [t]he nature and risks of undergoing or not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision to terminate a pregnancy. (emphasis added).
19. Prior to the amendment of the subject statute, physicians performing abortions were allowed to comply with the general informed consent statute which requires the physician to tailor the information given to the patient to the circumstances of that patient and to comport with the standard of conduct within the medical community in doing so. Presidential Women's Center, 707 So.2d at 1150; see also Section 766.103, Fla. Stat.;
20. Under Florida's Medical Consent Law, physicians are to provide information that would enable a "reasonable individual, ... under the circumstances, [to] have a general understanding of ... the substantial risks and hazards inherent in the proposed treatment or procedures, which are recognized among other physicians ... in the same or similar community who perform similar treatments or procedures." Section 766.103(3)(a)(2), Fla. Stat.;
21. The Amended Statute contains neither provision. It does not allow physicians to conform the information to the patient's circumstances or to the accepted standard of medical practice in the same or similar community. Instead, the Amended Statute standardizes the information being given to all women and removes the discretion accorded physicians in all circumstances other than abortion;
22. The Amended Statute "infringes on the woman's ability to receive her physician's opinion as to what is best for her, considering her circumstances." Presidential Women's Center, 707 So.2d at 1150;
. . . .
25. The test of vagueness of a statute is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.... The statute must give reasonable notice that a person's conduct is restricted by the statute.
Presidential Women's Center, 707 So.2d at 1150;
26. The Amended Statute mandates that a physician performing an abortion must satisfy a unique and confusing *534 "reasonable patient" standard or risk disciplinary proceedings. Statutes that pose the risk of license sanctions must be strictly construed in determining whether they violate the due process clause of the Florida Constitution. See, e.g., Whitaker v. Department of Insurance & Treasurer, 680 So.2d 528, 531 (Fla. 1st DCA 1996); cf. D'Alemberte v. Anderson, 349 So.2d 164, 168 (Fla.1977);
27. The Amended Statute requires a physician to provide information that a "reasonable patient would consider material." The Amended Statute fails to provide any guidance as to how a physician can meet that requirement.... The language of the Amended Statute requires that a physician provide information targeted to some hypothetical "reasonable patient" rather than the patient who is actually in front of him or her, without any guidance on how to do so;
28. As previously noted, prior to the amendment of the subject Amended Statute, physicians performing abortions were required to comply with the general informed consent statute which requires the physician to tailor the information given to the patient to the circumstances of that patient and to comport with the standard of conduct within the medical community in doing so. Under Florida's Medical Consent Law, physicians are to provide information that would enable a "reasonable individual,... under the circumstances, [to] have a general understanding of... the substantial risks and hazards inherent in the proposed treatment or procedures, which are recognized among other physicians ... in the same or similar community who perform similar treatments or procedures." Section 766.103(3)(a)(2), Fla. Stat. "By changing informed consent from what a reasonable physician would do under the circumstances, to what a reasonable patient would want to know, but without the traditional informed consent language `under the circumstances,' leaves the physicians with no standards to comport to." Presidential Women's Center, 707 So.2d at 1151;
29. By changing the informed consent law applicable to abortion providers from what a reasonable physician would do under the circumstances to what a reasonable patient would want to know, but without the traditional informed consent language, the Amended Statute is vague in that it leaves the physician with no standards with which to conform. As such, by requiring the physician to guess as to how to comply with the Amended Statute, or risk penalties including licensure penalties, the Amended Statute violates due process and is otherwise void for vagueness;
30. The vagueness of the Amended Statute is increased by the ambiguity created by its reference to "medical risks" in Section 390.0111(3)(a)1.c, but then making reference simply to "risks" in Section 390.0111(3)(a)1.a. It is unclear whether the physician is required to inform the patient of non-medical risks associated with undergoing or not undergoing an abortion. The Amended Statute provides no guidance as to what types of non-medical risks a physician must disclose nor on how to determine which economic, social, emotional or other risks associated with childbirth or terminating a pregnancy would be "material" to a "reasonable patient.";
. . . .
32. To sever the challenged portions of the Amended Statute would be to sever subsections of the informed consent section. To do so would reduce the section to being nonsensical and incomplete. Accordingly, the constitutional *535 defects of Section 390.0111(3) cannot be cured by severing portions of it.
As stated previously, we find that the trial court's final order, which relied heavily on our prior decision in Presidential Women's Center I, is legally correct and we affirm the summary judgment. We have examined the other issues raised on appeal, but find no error. Accordingly, the final judgment on review finding unconstitutional Florida's abortion informed-consent statute, also known as the "Women's Right to Know Act," is AFFIRMED.
POLEN and KLEIN, JJ., concur.
NOTES
[1] The relevant portion of the Act provides:

(3) Consents required....
(a) Except in the case of a medical emergency, consent to a termination of pregnancy is voluntary and informed only if:
1. The physician who is to perform the procedure, or the referring physician, has, at a minimum, orally, in-person, informed the woman of:
a. The nature and risks of undergoing or not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision of whether to terminate a pregnancy.
b. The probable gestational age of the fetus at the time the termination of pregnancy is to be performed.
c. The medical risks to the woman and fetus of carrying the pregnancy to term.
2. Printed materials prepared and provided by the department have been provided to the pregnant woman, if she chooses to view these materials, including:
a. description of the fetus.
b. A list of agencies that offer alternatives to terminating the pregnancy.
c. Detailed information on the availability of medical assistance benefits for prenatal care, childbirth, and neonatal care.
3. The woman acknowledges in writing, before the termination of pregnancy, that the information required to be provided under this subsection has been provided. Nothing in this paragraph is intended to prohibit a physician from providing any additional information which the physician deems material to the woman's informed decision to terminate her pregnancy.
(b) ... [allowing for emergency abortion procedures without compliance with informed consent requirements].
(c) Violation of this subsection by a physician constitutes grounds for disciplinary action under s. 458.331 or s. 459.015....
Ch. 97-151, Laws of Fla. (amending Chapter 390, Florida Statutes) (emphasis added).